HENRY & COATSWORTH COMPANY, APPELLEE, V. ALEXIS HALTER, IMPLEADED WITH CHARLES W. HARE ET AL., APPELLEES, AND EATON & PRINCE COMPANY ET AL., APPELLANTS.

FILED JUNE 8, 1899.    No. 8897.

1. **Judgments:** ASSIGNMENT TO DEFENDANT: PAYMENT. One cannot, except under special circumstances, become the assignee of a judgment against himself. The rule is that when payment has been made by one who is primarily liable, it operates as an absolute satisfaction, even though an assignment be made to a third person with the intention of keeping the judgment alive.

2. ————: ASSIGNMENT BY ATTORNEY. An attorney cannot, without actual authority from his client, sell and assign his client's judgment.

3. ———: PAYMENT: REVIVOR. A judgment which has been paid and extinguished by the owner of land upon which it was a lien cannot be afterwards revived for the purpose of cutting out other liens.

4. **Exchange of Securities.** A contract providing for a conditional exchange of securities is valid, and will be enforced according to the mutual intention of the parties thereto.

5. **Principal and Agent:** RATIFICATION. An agent cannot bind his principal beyond the limits of his actual or apparent authority; and the declared willingness of a principal to ratify a conditional contract will not operate as a ratification of an unconditional contract of which he is ignorant.

6. **Election of Remedies:** ACTION ON CONTRACT. The doctrine of election between inconsistent remedies has no application to a case where a party declares upon an express contract and demands whatever relief he may be entitled to thereunder.

7. **Mechanics' Liens:** MORTGAGES: PRIORITIES. The lien of an ordinary mortgage is not subordinate to mechanics' liens, merely because the money which it was given to secure was loaned for the purpose of improving the mortgaged premises, and under an express contract that it should be so used.

8. ———: CONFLICTING EVIDENCE: REVIEW. A finding of the trial court upon conflicting evidence as to the amount due upon a mechanic's lien will not be disturbed unless clearly wrong.

9. ———: CLAIM OF ARCHITECT. An architect is entitled to a mechanic's lien upon a building which has been constructed in accordance with plans prepared by him under contract with the owner.

10. ———: SEPARATE CONTRACTS: TIME TO FILE CLAIM. Where labor or material has been furnished by a party under distinct contracts, the claim for a mechanic's lien under each contract must be filed within the time limited by the statute for that purpose.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J. *Reversed.*

The opinion contains a statement of the case.

*Stewart & Munger* and *Charles A. Robbins,* for Eaton & Prince Company and others, appellants:

The sale under the Tiernan judgment was void, because the judgment had been paid in full by the debtor. (*Shaw v. Clark,* 6 Vt. 507; *Pope v. Benster,* 42 Neb. 305.)

The execution sale was void because it was made at the instance of an intermeddler, without knowledge of any person interested in the judgment. (*Taylor v. Robinson*, 14 Cal. 396; *McCracken v. San Francisco*, 16 Cal. 591; *Cook v. Tullis*, 18 Wall. [U. S.] 332; *Wood v. McCain*, 7 Ala. 800.)

The execution sale was void because of a conspiracy which prevented bidding. (*Goble v. O'Connor*, 43 Neb. 49; *Hay's Estate*, 159 Pa. St. 381.)

The execution sale was void because the sheriff accepted securities for the purchase price instead of money. (*Hooper v. Castetter*, 45 Neb. 67.)

Defendants Boggs, the Clark & Leonard Investment Company, Hare, and Tyler were parties to the fraudulent sale under the Tiernan judgment, accepted interests and securities under that sale in place of the interests and securities they previously held, and have lost by their fraud all right to claim under those original securities as against appellants. (*Pereau v. Frederick*, 17 Neb. 117; *Merriam v. Calhoun*, 15 Neb. 569; *Home Fire Ins. Co. v. Kennedy*, 47 Neb. 138; *Richmond v. Morford*, 4 Wash. 337; *Stanley v. White*, 160 Ill. 605; *Stevenson v. Crapnell*, 114 Ill. 19; *Worrall v. Munn*, 5 N. Y. 229; *Miller v. Fletcher*, 27 Gratt. [Va.] 403; *Ryan v. Cooke*, 68 Ill. App. 592; *Moss v. Riddle*, 5 Cranch [U. S.] 351; *United States School-Furniture Co. v. School District*, 56 Neb. 645; *Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb. 68; *Hughes v. Insurance Co. of North America*, 40 Neb. 627; *Esterly Harvesting Machine Co. v. Frolky*, 34 Neb. 110; *Morrow v. Jones*, 41 Neb. 867; *Farmers & Merchants Bank of Elk Creek v. Farmers & Merchants Nat. Bank*, 49 Neb. 379; *Hay's Estate*, 159 Pa. St. 381.)

Independent of their fraud, defendants Clark & Leonard Investment Company, Hare, and Tyler have elected to claim under the Clark mortgage, rather than under the Halter mortgage, and are bound by that election. (*First Nat. Bank of Chadron v. McKinney*, 47 Neb. 149; *Sanger v. Wood*, 3 Johns. Ch. [N. Y.] 416; *National Bank of Illinois*

*v. First Nat. Bank of Emporia*, 57 Kan. 115; *Terry v. Munger*, 121 N. Y. 161; *Lowenstein v. Glass*, 48 La. Ann. 1422; *Bach v. Tuch*, 126 N. Y. 53; *Bement v. Dow*, 66 Fed. Rep. 185; *Johnson v. Missouri P. R. Co.*, 52 Mo. App. 407; *Robb v. Strong*, 22 O. L. J. [U. S. C. C.] 338; *Merchants Bank v. Thomas*, 69 Tex. 237; *Compton v. Beach*, 62 Conn. 25; *Bailey r. Hewey*, 135 Mass. 172; *Dyckman r. Scratson*, 39 Minn. 132; *Geiber v. Littlefield*, 23 N. Y. Supp. 869; *Fowler v. Bowery Savings Bank*, 113 N. Y. 450; *Building & Loan Ass'n of Dakota v. Cameron*, 48 Neb. 124; *Yeomans v. Bell*, 151 N. Y. 230; *Strong v. Strong*, 102 N. Y. 69; *Pollock v. Smith*, 49 Neb. 864; *American Building & Loan Ass'n v. Rainboll*, 48 Neb. 434; *Temple Nat. Bank v. Warner*, 31 S. W. Rep. [Tex.] 239; *Kingman v. Stoddard*, 85 Fed. Rep. 740; *O'Bryan v. Glenn*, 91 Tenn. 106; *White v. White*, 107 Ala. 417; *Moline Plow Co. v. Rodgers*, 53 Kan. 743; *Pensenneau v. Pensenneau*, 22 Mo. 27; *Lamon v. McKee*, 7 Mackey [D. C.] 446; *Trimble v. Doty*, 16 O. St. 118; *Scicroe v. Homan*, 50 Neb. 601; *Chicago Lumber Co. v. Anderson*, 51 Neb. 159; *Bohn Sash & Door Co. v. Case*, 42 Neb. 281.)

The original Halter mortgage is subject to the mechanics' liens of these appellants, because the mortgagees were joint promoters with Halter of the building enterprise, and were in privity with him in the making of the contracts with these appellants. (*Millsap v. Ball*, 30 Neb. 728; *Sheehy v. Fulton*, 38 Neb. 691; *Holmes v. Hutchins*, 38 Neb. 601; *Hoagland v. Lowe*, 39 Neb. 397; *Chappell v. Smith*, 40 Neb. 579; *Rogers v. Central Loan & Trust Co.*, 49 Neb. 677; *Patrick Land Co. v. Leavenworth*, 42 Neb. 715; *Cummings v. Emslie*, 49 Neb. 485; *Kilpatrick v. Kansas City & B. R. Co.*, 38 Neb. 620.)

It is not essential that the original Halter mortgage should have been surrendered or released by the holders. Mere payment by money, or property, or exchange of securities, destroys the lien of a mortgage without a formal act. (*Teaff v. Ross*, 1 O. St. 469; *Headlock v. Bullfinch*, 31 Me. 246; *Hodgman v. Hitchcock*, 15 Vt. 374; *Iowa County v. Foster*, 49 Ia. 676; *Joyner v. Stancill*, 12 S. E.

Rep. [N. Car.] 912; *Jaffray v. Crane*, 50 Wis. 349; *McGiven v. Wheelock*, 7 Barb. [N. Y.] 22.)

As bearing on the law justifying a finding that Folts was entitled to a lien, see: *State Sash & Door Mfg. Co. v. Seminary*, 47 N. W. Rep. [Minn.] 796; *Sprecht v. Stevens*, 46 Neb. 874; *Jeffersonville v. Riter*, 37 N. E. Rep. [Ind.] 652.

References to sustain the claims of the architects for a lien: *Albright v. Smith*, 51 N. W. Rep. [S. Dak.] 590; *Miller v. Batchelder*, 117 Mass. 179.

*John S. Kirkpatrick*, for Forburger, Speidell & Co., appellants.

Reference: *Pleasants v. Blodgett*, 39 Neb. 741.

*George E. Hibner, Davis & Hibner, John P. Maule, Thomas Darnall, John B. Cunningham, Lambertson & Hall*, and *E. H. Wooley*, for other appellants.

*S. L. Geisthardt*, for Charles W. Hare and John J. Tyler, appellees:

The execution sale under the Tiernan judgment was valid and binding on appellants. (*Harbeck v. Vanderbilt*, 20 N. Y. 395; *Anglo-American Land & Mortgage Co. v. Bush*, 50 N. W. Rep. [Ia.] 1063; *Roberts v. Bruce*, 15 S. W. Rep. [Ky.] 872; *Ocburre v. Pearson*, 50 N. Y. Supp. 112; *Smith v. Foxworthy*, 39 Neb. 214; *Gulick v. Webb*, 41 Neb. 706; *Hopkins v. Ensign*, 25 N. E. Rep. [N. Y.] 306; *Neely v. McClure*, 1 Atl. Rep. [Pa.] 719; *Ritchie v. Judd*, 27 N. E. Rep. [Ill.] 682; *Barling v. Peters*, 25 N. E. Rep. [Ill.] 765; *Munson v. Magee*, 47 N. Y. Supp. 942; *Marie v. Garrison*, 83 N. Y. 14; *De Jarnette v. Verner*, 19 Pac. Rep. [Kan.] 666; *Butler v. Fitzgerald*, 43 Neb. 192.)

A judgment is a general lien and does not merge when the judgment creditor acquires title to the land. (*Matless v. Sundin*, 62 N. W. Rep. [Ia.] 662; *Caley v. Morgan*, 16 N. E. Rep. [Ind.] 790; *Seaman v. Hax*, 24 Pac. Rep. [Colo.] 461; *Shotwell v. Murray*, 1 Johns. Ch. [N. Y.] 512; *Moore*

*v. Smead*, 62 N. W. Rep. [Wis.] 426; *Vaughn v. Comet Consolidated Mining Co.*, 39 Pac. Rep. [Colo.] 422; *Sellers v. Floyd*, 52 Pac. Rep. [Colo.] 674; *Robinson Bank v. Miller*, 38 N. E. Rep. [Ill.] 1078; *Boos v. Morgan*, 30 N. E. Rep. [Ind.] 140; *Hanlon v. Doherty*, 9 N. E. Rep. [Ind.] 782; *Sutton v. Sutton*, 1 S. E. Rep. [S. Car.] 19.)

Tyler and Hare were not parties to the agreement relating to the Tiernan sale, nor did they by their subsequent acts become such; and neither by any fraud of their own nor upon the doctrine of election have they lost their right to be restored to their lien under the Halter mortgage, if upon any ground the Tiernan sale should be held void. (*City Bank v. Radtke*, 54 N. W. Rep. [Ia.] 435; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207; *Taylor v. Pumphrey*, 32 S. W. Rep. [Tex.] 225; *Floyd v. Patterson*, 72 Tex. 207; *Compton v. Ashley*, 28 S. W. Rep. [Tex.] 224; *Harris v. Warlick*, 42 S. W. Rep. [Tex.] 356.)

It is the settled law of this state that a mortgagee under circumstances like those existing here is not a promoter of the building enterprise, and does not subject his security to mechanics' liens for work or materials which began to be furnished after the execution of the mortgage. (*Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207; *Holmes v. Hutchins*, 38 Neb. 601; *Hoagland v. Lowe*, 39 Neb. 397; *Chappell v. Smith*, 40 Neb. 579; *Patrick Land Co. v. Leavenworth*, 42 Neb. 715; *Rogers v. Central Loan & Trust Co.*, 49 Neb. 677.)

The several items enumerated in the mechanic's lien claim were furnished not under a single contract, but under separate and distinct contracts, and the court will not merge them into one, merely to donate to a party the benefit of a lien when he failed to exercise the necessary precautions and comply with the statutory requirements for securing one. (*Central Loan & Trust Co. v. O'Sullivan*, 44 Neb. 834; *Hansen v. Kinney*, 46 Neb. 207; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207; *Buchanan v. Selden*, 43 Neb. 559.)

The evidence does not warrant the court in allowing

anything for making plans, specifications, and details, because the value of the claimants' services under that item is not shown. (*Mitchell v. Packard*, 47 N. E. Rep. [Mass.] 113.)

An architect is not entitled to a mechanic's lien for making plans, specifications, details, and perspectives, unless these in some way are combined with superintendence or other actual labor furnished to the building. (*Fiske v. School District*, 58 Neb. 163; *Mitchel v. Packard*, 47 N. E. Rep. [Mass.] 113; *Rinn v. Electric Power Co.*, 38 N. Y. Supp. 345; *Foster v. Tierney*, 59 N. W. Rep. [Ia.] 56.)

The affidavit to a mechanic's lien must be properly authenticated. (*Byrd v. Cochran*, 39 Neb. 109; *Pitts v. Seavey*, 55 N. W. Rep. [Ia.] 480; *Colman v. Goodnow*, 29 N. W. Rep. [Minn.] 338; *Hill v. Alliance Building Co.*, 60 N. W. Rep. [S. Dak.] 752.)

*Billingsley & Greene, John L. Doty, Reese, Gilkeson, Comstock & Reese, M. L. Easterday, Lamb & Adams, Abbott, Selleck & Lane, Stevens & Cochran, Fritz Westermann*, and *Webster, Rose & Fisherdick*, for other appellees.

SULLIVAN, J.

This action, which was brought by Henry & Coatsworth Company to foreclose a mechanic's lien, resulted in a decree, from which a number of lien claimants, who were parties defendant, have appealed. The pleadings and evidence are voluminous, but we believe the following statement of facts will sufficiently develop the main questions presented for decision: Alexis Halter, being the owner of three business lots in the city of Lincoln, decided to erect thereon a five-story building. In June, 1892, he employed Tyler & Son, architects, to prepare plans, and in the following October commenced the work of construction. January 21, 1893, he borrowed of the Clark & Leonard Investment Company $35,000 to be used in carrying the structure to completion. To secure this

loan Halter and wife executed to the investment com-
pany a coupon bond for $35,000 and a first mortgage on
the property in question. At the same time the borrower
executed to the lender a commission mortgage for $1,500
on the same property. Both mortgages were immedi-
ately recorded, and five days later, on January 26, the
$35,000 mortgage was sold and assigned to the appellee
Charles W. Hare, who afterwards transferred it to the
appellee John J. Tyler, as collateral security for a loan
of $32,000. In his written application for the loan Halter
stated that the money was to be used in completing the
building then in course of construction, but there was
no agreement requiring him to use it for that purpose.
Halter did, however, as part of the transaction, execute
a bond with sureties to indemnify the mortgagee and its
assigns against possible loss resulting from the filing of
the mechanics' liens. This obligation also provided that
the investment company, or its successors in interest,
might pay off any lien against the property when filed
and established. In July, 1893, a portion of the building
was ready for occupancy, but it was not entirely finished
until December of that year. The appellants and others
having contributed labor or materials toward the con-
struction of the building, and not having been paid there-
for, filed in the proper office their claims for liens. In
August, 1893, the property in controversy, commonly
known as the "Halter Block," was conveyed by Alexis
Halter and wife to the Lincoln Business Block Company,
a corporation. Some of the stock of this corporation
issued to Halter was by him pledged to the German
National Bank as collateral security for money loaned.
In March, 1894, transcripts of two judgments in favor of
the Hawarden Furnace Grate Company and against the
Lincoln Business Block Company were filed in the office of
the clerk of the district court of Lancaster county. Under
executions issued on these judgments, the Halter Block
was sold on May 1, 1894, the purchaser being Charles
T. Boggs, who was acting in the interest of the German

National Bank, of which he was president. The sale was confirmed by the district court on May 5. In October, 1892, Christopher Tiernan recovered a judgment in the district court of Lancaster county against Alexis Halter for the sum of $385.40. This judgment was a lien on the Halter Block and was prior to the lien of the mortgages to the Clark & Leonard Investment Company, and also prior to most of the mechanics' liens. In October, 1893, Alexis Halter sent his brother Andrew to pay the Tiernan judgment. He gave him for the purpose $300 in cash and his personal check for the balance. This balance Andrew agreed to advance as an accommodation. He made the advancement according to his agreement and paid the full amount due on the judgment. Instead, however, of having it canceled, he caused it to be assigned to Leo Haben, his brother-in-law, who had no knowledge of the matter and no interest in it. The check given by Alexis to Andrew was afterwards paid, but the precise time of payment does not appear. In May, 1894, R. J. Greene, assuming to act as attorney for Haben, made a formal sale and assignment of the judgment to Boggs. Of this transaction Haben was entirely ignorant. He had only recently learned that the judgment stood in his name as assignee. He claimed no interest in it, and had conferred upon Greene neither actual nor apparent authority to sell it. It seems, however, that he afterwards advanced Andrew Halter some money on the judgment, and that in September, 1894, for a consideration of $250, he ratified in writing the assignment previously made by Greene to Boggs. Under an execution issued on the Tiernan judgment, Boggs, soon after obtaining the assignment from Greene, caused the Halter Block to be sold and became himself the purchaser. The purchase price was $35,000, which, according to the return of the sheriff, has been fully paid and is in his hands for distribution. On June 23, 1894, the sale was confirmed and a deed ordered. The following day Boggs and wife conveyed the premises to Charles C. Clark, who soon after

mortgaged the same to the Clark & Leonard Investment Company to secure his coupon bond for the sum of $35,-000. Clark also executed a mortgage on the property to W. F. Meyer to secure the sum of $18,777.50. This mortgage was apparently made for the benefit of the German National Bank and the First National Bank of Lincoln, and represents an indebtedness due from Halter to those banks. Clark paid nothing for the property and was merely acting for Boggs in making the mortgages, the latter not wishing to appear of record as a borrower. When the transactions were concluded the premises were reconveyed to Boggs, who is now the fee owner of the same. Before the sale under the Tiernan judgment an arrangement was made between Boggs and J. W. McDonald, representing the investment company, which contemplated that Boggs should buy the property, pay off the liens and claims of the investment company, and execute to it a new mortgage for $35,000, to take the place of the mortgage held by Hare and Tyler. Whether the execution of this plan was to depend upon confirmation of the sale, or upon the acquisition by Boggs of a good title under the sale, is not very clear. In pursuance of this arrangement Boggs paid the investment company on July 26, 1894, the sum of $5,500, being the amount of its commission, mortgage, interest coupons paid to Hare and Tyler, and some other matters. He also caused Charles C. Clark to execute the $35,000 mortgage above mentioned. This mortgage has never been delivered to Hare and Tyler personally, and they have neither surrendered the Halter mortgage nor released it of record. Prior to November, 1894, they had no knowledge of the arrangement between McDonald and Boggs and were not aware that the property had become involved in litigation, or that there had been any change of ownership. Hare and Tyler were not originally parties to the action, but became such by intervention in February, 1895. The substance of their amended answer is that they delivered the Halter mortgage to the Clark & Leonard Investment

Company to be exchanged for the Clark mortgage in case the court should affirm the validity of the sale under the Tiernan judgment. They ask, in the event of the sale being adjudged void, for a foreclosure of the Halter mortgage. Boggs filed an answer asking that the title acquired by him under the Tiernan judgment be quieted and confirmed. The appellants filed pleadings, alleging that the sale to Boggs was void; that the Halter mortgage had been extinguished, and that their liens were superior to the lien of the Clark mortgage. The district court found and decreed that James P. Walton had a first lien on the premises; that Tyler & Son had a second lien; that the sale under the Tiernan judgment was valid and that the Clark mortgage was a third lien on the property; that William F. Meyer had a fourth lien; that the liens of the other parties to the action had been divested from the land by the execution sale and had attached to the proceeds of such sale in the hands of the sheriff. The decree then awards a first lien on the fund in the hands of the sheriff to Forburger, Speidell & Co., and applies the balance on the Halter mortgage.

The first question to be decided is the validity of the execution sale to Boggs under the Tiernan judgment. The appellees, Hare and Tyler, contend that the judgment was not extinguished in consequence of the payment made by Andrew Halter to the attorney for the judgment creditor. We think it was. Andrew Halter was acting as his brother's agent. All the money paid was really the money of the judgment debtor. It had been loaned to him upon his personal check and was shortly after repaid. The rule is that when payment is made by one who is primarily liable, it operates as an absolute satisfaction although an assignment is made to a third person with the intention of keeping it alive: One cannot, except under special circumstances, become the assignee of a judgment against himself. (*Shaw v. Clark*, 6 Vt. 507; *Head v. Gervais*, Walker [Miss.] 431; *Montgomery v. Vickery*, 110 Ind. 211; *Birke v. Abbott*, 103

Ind. 1; *Booth v. Farmers & Mechanics Nat. Bank*, 74 N. Y. 228; *Hogan v. Reynolds*, 21 Ala. 56; 2 Pomeroy, Equity Jurisprudence sec. 797; 2 Freeman, Judgments [4th ed.] sec. 466.) Had Andrew advanced the money with an understanding that he should take an assignment as security, there can be no doubt that the judgment would have continued in force until the check was paid. But there was no such arrangement, and if there had been, the security could not outlive the debt. That the check given by Alexis to Andrew was paid is proven conclusively. Just when it was paid does not appear, but the only warrantable inference is that payment was made long before the assignment to Boggs. It is true that Andrew told Haben that he had an interest to the extent of $200 in the judgment, but that evidence is not competent to establish the fact. The statement was a mere self-serving declaration. Besides, it appears that the assignment to Haben was for the benefit of Alexis, and not for the protection of Andrew. We quote from Andrew's testimony: "Q. What was the object of taking this assignment to Mr. Haben at the time you paid Pound & Burr? A. Why the judgment was satisfactorily paid, but after talking the matter over, Mr. Alexis Halter thought it would be better to take the assignment in some other person's name so if any trouble would arise he would be in a position to clear the matter." A circumstance to which McDonald testified also indicates that the assignment was made in the interest of Alexis. Whatever may have been the motive for the assignment to Haben, it is perfectly clear that the judgment was not a lien on the Halter Block at the time of the execution sale; and it is equally evident that Boggs did not at that time have even the apparent ownership of the judgment. In his haste to cut out the mechanics' liens he not only bought a lifeless judgment, but bought it from one who had no color of authority to make the sale. (*Head v. Gervais, supra;* *Wilson v. Wadleigh*, 36 Me. 496; Weeks, Attorneys sec. 239.)

Boggs having become the owner of the property by virtue of the execution sale under the Hawarden judgment, the liens paid off by him were intended to be, and are absolutely, extinguished. If he has redeemed the Halter mortgage with the Clark mortgage, then the lien of Hare and Tyler is subordinate to all of the mechanics' liens. Whether there has been such redemption is a question of fact, in the absence of circumstances to which the law would attach a conclusive presumption. Much space is devoted in the briefs of counsel to a discussion of an alleged conspiracy to defraud the appellants and other lienors, but we find in the record no evidence whatever of any fraudulent transaction in which either Hare or Tyler participated. Indeed, while there is abundant proof of shrewd tactics by Boggs and McDonald, we think neither of them has been guilty of any act which amounts to a legal fraud. There was, undoubtedly, an attempt to overreach the lien claimants, but the means employed to accomplish that end were not unlawful. The question, then, with which we have to deal in this connection is whether the Halter mortgage was exchanged absolutely for the Clark mortgage; in other words, it is a question of the mutual intention of the parties to the transaction. The pleadings, as we understand them, conclusively establish the fact that the Clark mortgage was delivered to the authorized agent of Hare and Tyler, and that they are the beneficial owners of the security. It is claimed, however, that the delivery of the Clark mortgage did not operate as a satisfaction of the Halter mortgage, because it was expressly stipulated that it should not have that effect. If such an agreement was made, we can perceive no reason why it should not be enforced. Certainly Boggs had a right to execute a mortgage to Hare and Tyler on such terms as he saw fit to accept. It was undoubtedly lawful for the parties to fix a condition on which such mortgage should become effective as a satisfaction of the prior mortgage. What then was the contract under which Boggs delivered the mortgage to the

Clark & Leonard Investment Company? The only testimony bearing upon the point is that given by McDonald and Boggs, which is to the effect that the Clark mortgage was to be received in satisfaction of the Halter mortgage only in case the validity of the Tiernan sale should be judicially established. While there are circumstances strongly tending to discredit these witnesses, we do not feel warranted in rejecting their evidence as entirely unworthy of belief, and accordingly hold that there has been no substitution of securities. The contract in relation to the exchange of mortgages being valid and enforceable between the parties, and not infringing the legal rights of appellants or other lien claimants, must be given full effect in this litigation. But if the agreement between McDonald and Boggs was for an unconditional exchange of securities, it is certainly not binding upon Hare and Tyler, for they neither authorized nor ratified such an exchange. They have proceeded on the assumption that the exchange was conditional, and neither expressly nor by implication have they affirmed any other. Manifestly Boggs could not on this record insist that they have, and the rights of appellants in this matter are no greater than his.

It was entirely proper for Hare and Tyler to file an answer alleging their contract and demanding the relief to which they were entitled under it. (*Compton v. Ashley*, 28 S. W. Rep. [Tex.] 224; *Taylor Cotton-Seed Oil & Gin Co. v. Pumphrey*, 32 S. W. Rep. [Tex.] 225.) The doctrine of election between inconsistent remedies has no application here. A proceeding by Hare and Tyler to obtain a decree affirming the validity of the sale under the Tiernan judgment would not operate in favor of Boggs to effect a substitution of securities. Neither can it produce that result for the benefit of others having liens on the property.

It is next contended that the Halter mortgage is subject to the mechanics' liens because the original owner, the Clark & Leonard Investment Company, was a joint

promoter of the building enterprise and therefore in privity with lien claimants. Under facts substantially identical with those in the case before us it was held in *Hoagland v. Lowe*, 39 Neb. 397, and in *Patrick Land Co. v. Leavenworth*, 42 Neb. 715, that the lien of the mortgage was superior to that of mechanics and material-men. Whatever may be the logic of the earlier adjudications in this state, we are, by the decisions just mentioned, irrevocably committed to the doctrine that the lien of an ordinary mortgage is not subordinate to mechanics' liens, merely because the money which it was given to secure was loaned for the purpose of improving the mortgaged premises and under an express contract that it should be so used. The rule of decision in this class of cases has been too long established to be now successfully assailed.

Some questions peculiarly affecting individual appellants remain yet to be considered. Forburger, Speidell & Co. furnished cut stone for the building and agreed to accept as part payment therefor two unincumbered city lots estimated to be worth $200. A quitclaim deed for said lots was executed by Halter and wife about May 1, 1893, and left with a member of the firm at their place of business. The instrument was not accepted, because the property was subject to judgment liens exceeding its value. Neither was it formally tendered back to Halter. Afterwards, according to the finding of the trial court, the parties came together and effected a settlement, in which the sum of $210 was agreed upon as the balance due. This finding, although questioned, is sustained by sufficient evidence and will not be disturbed.

The court awarded James Tyler & Son a mechanic's lien for the sum of $303.75 and adjudged the same to be prior to the Halter mortgage. It appears from the record that the claim of this firm embraces items under five separate contracts as follows: (1) For services on plans and specifications, details and contracts, $875; (2) for perspective drawing, $25; (3) for making bills of ma-

terials, $35; (4) for measuring excavations, concrete and brick work, $50; and (5) for superintending, $175. The contract for the first item was made in June, 1892, and the work on the plans was commenced soon after. The Tylers did not superintend the work on construction, but they furnished the details from time to time until the building was completed, which was not earlier than December 22, 1893. The claim for a lien was filed on February 24, 1894. The appellees contend that an architect who has prepared plans, specifications, and details for a building is not, except as an incident to superintendence, entitled to a lien for his services. In *Fiske v. School District*, 58 Neb. 163, 78 N. W. Rep. 392, there is an intimation that an architect is entitled to a mechanic's lien upon a building which has been constructed in accordance with plans prepared by him under contract with the owner. We now hold that the work of drawing such plans enters into the construction of the building which is afterwards erected in conformity therewith, and that the architect in such case is within the purview of section 1 of the mechanics' lien law. As the claim of the Tylers was filed within four months of the time the last details were furnished, they have a valid lien under the first contract and are entitled to recover $765, with interest thereon from February 20, 1894.

The trial court found that there was due F. E. Foltz the sum of $637.65, for materials and labor, and rendered against Halter a personal judgment for that amount. The question now in controversy is whether Foltz is entitled to a lien prior to the lien of the Halter mortgage. After a careful examination of the evidence we are entirely convinced that this appellant's claim is based upon two distinct contracts, and that the claim for a lien under the first contract, which was made in October, 1892, was not filed within the time limited by the statute and so never became effective. The other contract was made January 31, 1893, and the claim under it is, therefore, junior to the lien of Hare and Tyler,

The judgment is reversed and the cause remanded to the district court with direction to render a decree in conformity with the conclusions herein announced.

REVERSED.