SOPHIE HENKEL ET AL., APPELLEES, V. WILLIAM BOUDREAU,
APPELLEE; LEONEL BOURDEAU ET AL., APPELLANTS.

FILED MARCH 24, 1911. No. 16,366.

1. **Appeal:** CORRECTION OF VERDICT. In the trial of an action against
dealers in intoxicating liquors for damages, in which they were
sued jointly with their sureties, the jury agreed upon what their
finding should be and returned with a written verdict, when it
was filed by the clerk and the jury discharged from a further
consideration of the case and for the term of court. Objection
was immediately made to the form of the verdict, and within two
minutes after its return and discharge of the jury, and before the
jurors had left the courthouse, the court ordered the jurors to
return to the jury box when it was discovered that the written
verdict did not express the finding and agreement of the jury, and
they were directed to return to their room and correct the verdict
so as to conform to such finding and agreement. There was no
showing that any juror had conversed with or been approached by
any other person upon the subject of the verdict or the merits of
the case. A second and corrected verdict was soon thereafter
returned into' court by the jury, upon which judgment was
rendered. *Held*, under the provisions of sections 145 and 312 of
the code, that, in the absence of a showing of prejudice, the judg-
ment was valid and could not for that reason alone be reversed.

2. ———: ADMISSION OF EVIDENCE. The petition alleged the execu-
tion of the surety bonds by the defendant bonding company, which
admitted the averment in its answer. This rendered it unneces-
sary to introduce the bonds in evidence on the trial. But the
bonds were introduced, and admitted in evidence by the court
over defendants' objection and exception. *Held*, That the ad-
mission of the bonds in evidence could work no prejudice to the
defendant bonding company.

3. ———: DEFAULT: PRESUMPTIONS. One of the principal defendants
duly served with summons made 'default, filing no answer or other
pleading. The cause was tried on an amended petition filed after
answer day. Subsequently a default was entered against the un-
answering defendant. The original petition is not presented in
the transcript, and the record does not show any change in the
averments which could affect the rights or liability of the default-
ing defendant. All presumptions being in favor of the regularity
of the proceedings in the trial court, and no error being made to
appear, the action of that court in entering the default cannot be
reviewed.

4. **Trial: ISSUES: INSTRUCTIONS.** The petition contained the averment that the principal defendants were engaged in the sale of intoxi-'cating liquors in the village of C., under a license granted by said village, at the time of the alleged sales of liquor. The answer admitted the existence of the license at the time. This rendered it unnecessary for the court to submit the question of the issuance and existence of the license to the jury, there being no issue upon that point.

5. **Appeal: INSTRUCTIONS: HARMLESS ERROR.** It is error for the court, in instructing a jury, to copy sections of the statute, where the section contains subjects not in issue nor proper to be presented to the jury, but the error is without prejudice if the issues on trial are clearly defined, and the embodying of the immaterial portion of the section could not in any way mislead the jury.

6. ——: ——: **DISCRETION OF COURT.** It is not customary for courts, in instructing a jury, to admonish them that it is not within their province to inquire into the propriety of existing laws, but to be governed by them. But this is within the discretion of the court and unless there is an abuse of that discretion a judgment will not for that reason alone be reversed.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*L. H. Blackledge* and *A. H. Byrum,* for appellants.

*M. A. Hartigan* and *W. H. Miller, contra.*

REESE, C. J.

This action was instituted in the district court for Franklin county by plaintiff in her own right and on behalf of her minor children, five in number, against the defendants William Boudreau, Liona Boudreau (afterward changed to Leonel Bourdeau), Frank Robbins, and the United States Fidelity & Guaranty Company; it being alleged in the petition in substance that the defendants were engaged in the sale of intoxicating liquors, as licensed saloon-keepers, in the village of Campbell, in that county, and the guaranty company as the surety upon their several bonds. It is alleged that August Henkel, the husband of plaintiff and father of her minor children,

53

was, prior to the injury complained of, a prosperous and successful farmer and provided well for the maintenance and support of plaintiff and their children; that for more than a year prior to the 14th day of January, 1908, the defendants had each sold and supplied to the said August Henkel intoxicating liquors until he had become an habitual drunkard, and on that day they each sold and furnished such liquors to him until he became helplessly intoxicated, and in seeking to return to his home, some 6 miles distant, with a team and loaded wagon he was unable to manage the team, when they ran away with him, throwing him out of the wagon, crushing and mangling his right arm to such an extent as to require that it be amputated near the shoulder, which was done, whereby he became a cripple for life with greatly impaired health, and thus rendered unable to maintain and contribute to the support of the family as he had theretofore done, whereby plaintiff and the children in whose behalf the suit was brought were damaged in the sum of $15,000, for which judgment was demanded. Separate answers were filed by Robbins, Leonel Bourdeau and the guaranty company, which, in substance, admitted the licensed character of defendants, the suretyship of the guaranty company, the injury to August Henkel, and denying all other averments of the petition. Defendant Leonel Bourdeau presented the additional averment that he was not sued by his correct name, and pleaded his true name. William Boudreau made default, failing to file answer or other pleading. A jury trial was had, the jury were instructed, and retired for deliberation on the 25th day of March, 1909. On the next morning they returned into court with a verdict.

One of the principal contentions on this appeal is upon the authority of the court to render judgment for the amount for which the said judgment was entered. The journal entry shows that at 9 o'clock A. M. the jury returned their verdict finding " 'for the plaintiffs and against the defendants William Boudreau, Leonel Bourdeau, and the United (States) Fidelity and Guaranty Company of

Baltimore, Md., and assess the amount they have and recover of and from said defendants and each of them at the sum of $2,000,' * * . * which verdict was received and read in open court and the jury discharged by the court from the case and for the term. Afterward on the same day at 9 : 02 o'clock A. M., upon the attorneys for the plaintiff challenging the form of the verdict, the aforesaid jurors by direction of the court were recalled into the box, and after certain inquiries by the court and answers by one or more of the jurors, all of which were taken down by the reporter, said jurors, by direction of the court, were sent back to the jury room with instructions, which were given orally, to insert the total amount they find the plaintiffs entitled to recover, and said jurors retired in charge of the bailiff, and afterward on the same day at 9 : 07 o'clock A. M. returned into court with a verdict for plaintiffs and against William Boudreau, Leonel Bourdeau, and United States Fidelity & Guaranty Company for $4,000, in words and figures as follows." The verdict is set out in the record, but as it is similar to the former one, with the exception of the amount of damages assessed, it need not be here copied. As the jury did not find against Robbins, judgment of dismissal was entered in his favor. The action of the court in recalling the jury and receiving the second verdict was duly objected and excepted to. Separate motions for a new trial were filed, overruled, and judgment was entered against the three defendants jointly for $4,000. They appeal, contending that the court erred in recalling the jury, resubmitting the case to them, receiving their second verdict and entering judgment thereon..

There is a sharp conflict between the affidavits in support of the motions for a new trial and the record. We find no affidavits submitted by plaintiffs prior to the ruling on said motions. It is quite clear that some of the jurors had left the jury box and mingled with those who were on the floor of the courtroom, and one affiant states that he saw some of the jurors on the lower floor of the

building. In the bill of exceptions it is recited: "There-upon (after the receipt of the first verdict) the court in-formed the jury that they were discharged, * * * and, while the jurors were in the courtroom and the hallway of the courtroom, counsel for plaintiffs challenged the form of the verdict; and thereupon said jurors were summoned again to the jury box by order of the court. The verdict was again read to them and they were again asked if that was their verdict," the attorneys for both parties "being present in open court, and made no objec-tion at that time to the proceedings and the instructions of the court to the jury." The foreman of the jury sought to make an explanation to the court, but the court inter-rupted him, and stated that the verdict must be for the whole amount plaintiffs should recover. The foreman then stated that they "understood it was each of them $2,000." The court then informed the jury that the whole judgment would run against each; that, if the verdict was "not the amount you find the plaintiffs are entitled to, you take your verdict and retire with the instructions to your jury room, and put in whatever amount you find the plaintiffs are entitled to." The foreman: "The whole amount?" The court: "The whole amount." The jury retired to their room and returned the second verdict, upon which the judgment was rendered. That the pro-cedure was irregular there can be little doubt, but we think there can be no reasonable question but that the last verdict corresponded with the actual finding and agree-ment of the jury. The difficulty was that, for want of proper direction, perhaps, they believed they were to find separate verdicts against each of the principal defendants, and did not understand that the verdict should be for the gross amount of damages found. The length of time in-tervening between the return of the first verdict and their recall precludes the idea that any one could have tam-pered with any member, and thus succeeded in producing an agreement differing from that made before the return of the first verdict. Many cases are cited by defendants

holding that no correction could be made after the receipt of a verdict and discharge of the jury. This was the inflexible rule of the common law, and, had not the rule of procedure been made more liberal by our code provisions, we would be bound to follow that ancient line of practice. It is to be noticed that, in what are called the code states, many of those rules have been modified and changed, as by our own code, which in section 145 provides: "The court in every stage of an action must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." And section 312 of the code provides: "No exception shall be regarded, unless it is material, and prejudicial to the substantial rights of the party excepting." Since the jury had agreed upon the $4,000 as the assessment of damages, and their verdict had failed to correspond with that agreement, there was no error or prejudice in their recall and their correction of the verdict. *Cohen v. Sioux City Traction Co.*, 141 Ia. 469; *Fearnley v. Fearnley*, 44 Colo. 417; *Nolan v. East*, 132 Ill. App. 634; *Rogers v. Sample*, 28 Neb. 141; *Levells v. State*, 32 Ark. 585; *Brister v. State*, 26 Ala. 107. There is no evidence of any improper action or conversation by any juror, or that any person approached them or spoke to them upon any question involved in the case, or of the case itself. There was nothing said by the court, or by counsel, which could in any way tend to influence the jury as to the amount for which the verdict should be returned. No prejudice being shown, the action of the court must be held valid.

It is contended that the court erred in the admission of the bonds alleged to have been executed by the defendant guaranty company. We are persuaded that the objection is without merit. The answer of that company admits that it is a bonding company, "and that on or about April 9, 1907, it executed with and for William Boudreau, Leonel Bourdeau and Frank Robbins, respectively, as

principals, three several bonds in the sum of $5,000 each, containing the conditions and obligations substantially as set forth in the exhibits A, B and C to said amended petition." The exhibits referred to are copies of the bonds attached to the petition. This being an admission of the execution of the bonds, their introduction in evidence, even if unnecessary, could work no prejudice.

It is also insisted that the court erred in entering a default against William Boudreau, the ground of contention being that the amended petition was filed after answer day and no notice was given of the filing thereof. The original petition is not a part of the transcript, and it is impossible for us to ascertain what it contained and whether there was any change of allegations as against that defendant or not. Therefore the merits or demerits of the contention cannot be determined. The precipe filed in this court designates Leonel Bourdeau and the United States Fidelity & Guaranty Company, only, as appellants. It may be doubted if, under rule 13 of this court, William Boudreau is a party to this appeal.

Objection is made to instruction numbered 2, given by the court on its own motion. This instruction stated the issues in condensed form, informing the jury of the facts upon which the burden of proof rested upon the plaintiffs. In the issues stated the court did not inform the jury that it was incumbent on plaintiffs by a preponderance of the evidence to prove "the issuance of the license and the delivery and approval of the bond." As we have already seen, there was no issue as to the execution of the bonds to be submitted to the jury; the fact being sufficiently admitted. The petition, while not to be recommended as a model, contained the allegation that the defendants were engaged in the sale of intoxicating liquors in the village of Campbell "under a license granted by said village, its board and officers" at the time of the alleged sales and injury, and the answers of the principal defendants admit that during the year in which the cause of action arose they were engaged in the sale of liquors at the place

named "under a license granted by the board of trustees of said village." This rendered it unnecessary for the court to submit the question of the issuance of the licenses to the jury, there being no issue upon that subject.

Instruction numbered 6 is complained of. By that instruction attention is called to the particular section of the statute by number, and the section is copied, being section 7168, Ann. St. 1909. This section contains provisions not applicable to the case on trial, and those provisions being copied into the instruction is claimed to have been prejudicial error. That this method of instruction cannot in all cases be approved must be conceded. If a section of the statute contains no provisions other than those to be applied to the case in hand, there can be no reasonable objection to its being copied into the instruction; but where, as in this case, the section is broader in its provisions than the issues, it should not, as a general rule, be copied in its entirety. It was not proper to copy that part of the section referring to injuries inflicted by intoxicated persons upon the person or property of others, and to that extent the instruction fails to meet approval. But this is not enough to require a reversal of the judgment. It must appear that the error resulted in prejudice to the defendants. We are unable to perceive how the instruction could have that effect. True, there was no question of that kind involved in the case, but the true issue was so clearly presented to the jury by the evidence and other instructions of the court as to leave no ground for any presumption that the jury were in any respect misled thereby.

A portion of the seventh instruction given by the court is sharply criticised by defendants. We can find no objection to the statement of law governing the case, as contained in the instruction, and therefore do not copy that portion. After so stating the law, the instruction continues: "It is not for you, gentlemen of the jury, to inquire into and consider the propriety of the law in force in this state relative to the sale of intoxicating liquors, under

which this action is brought. The law as it now stands on the statute books of this state should be enforced, and if from all the evidence you believe that the plaintiffs are. entitled to recover, as explained in these instructions, then you should find for the plaintiffs and against any and all of the defendants contributing to the intoxication of August Henkel, if you find he was intoxicated at the time of his injury, without regard to what your personal view may be as to the propriety or wisdom of the law on this subject in force in this state." That portion of this excerpt which contains the admonition to the jury to lay aside their personal views as to the propriety of our laws was, possibly, not necessary, as juries, as a general rule, fully understand their duties and obligations in this regard. The necessity for such admonitions may sometimes exist. Of this the court must be the judge and exercise his discretion, and, unless there is an abuse of that discretion resulting in prejudice, reviewing courts cannot interfere. While this cautionary instruction may not have been necessary, we are unable to see where or how it could have worked any prejudice to defendants. It was clearly the duty of the jury to lay aside their personal views and return a verdict in accordance with the law and evidence. This in substance was the direction of the court. True, it might have been stated in a much more condensed form, if necessary to be referred to at all, but that fact could' not require a reversal of the judgment.

The action of the court in giving other instructions and in refusing to give instructions requested by defendants is criticised in the briefs and arguments of counsel, but upon a review of all such we can detect no sufficient reason for disturbing the judgment.

The vital issues in this case were few, yet the record shows that 27 instructions, including those requested by plaintiffs and defendants, covering 16 typewritten pages of the transcript, were given to the jury, involving many repetitions and the copying of a number of sections of the statute. We are unable to see why the whole of the law

pertinent and proper to have been given might not **have** been condensed to within reasonable bounds, without repetition, and more easily of comprehension by the jury. "Instructions in a case should be few in number and should present to the jury the law applicable to the issues in the case in simple language and terse sentences." *City of Beatrice v. Leary,* 45 Neb. 149. But a judgment will not be reversed because of the number of instructions given to the jury by the trial court, unless it clearly appears that prejudice results therefrom. *Omaha Street R. Co. v. Boesen,* 68 Neb. 437.

There being no reversible error shown by the record, the judgment of the district court is

AFFIRMED.