UNITED STATES FIDELITY & GUARANTY CO., APPELLANT, *v.* BOURDEAU, RESPONDENT.

(No. 4,821.)

(Submitted May 31, 1922. Decided June 30, 1922.)

[208 Pac. 947.]

*Principal and Agent—Suretyship—Attorney and Client— Powers of Attorney—Oral Contracts—Agency—Unauthorized Act of Agent—Ratification—Evidence—Insufficiency.*

Attorney and Client—Power of Attorney to Release Party from Liability Under Contract of Indemnity.
1.   An attorney has no authority by virtue of his retainer to release a person from liability under his contract to indemnify the attorney's client, a surety company, for moneys it was required to pay in satisfaction of a judgment against him because of his failure to pay it.

Same—Oral Agreement to Release Party from Liability Under Contract —Invalidity.
2.   In an action by a surety company to recover from a judgment debtor the amount of the judgment it was compelled to pay for him, where defendant relied upon an oral agreement alleged to have been made between himself and the company's attorney that in consideration of defendant's assistance in defending the action in which the judgment was rendered, he should be released of his obligation to reimburse the company in case the judgment was adverse to him, *held*, under section 3606, Cobbey's Annotated Statutes of Nebraska, in which state the alleged agreement was made, that the company was not bound by it and defendant was not released from liability in the absence of testimony of the attorney, his written agreement or an entry thereof in the court's record establishing the agreement.

Same—Principal and Agent—Ratification of Agent's Unauthorized Act— Evidence—Insufficiency.
3.   Ratification of an unauthorized act of a corporation's agent cannot be shown by testimony of the party asserting it, to the effect that one, said to have been one of its officers but about whose position he knew nothing himself, stated to him that anything the agent did was all right, "that he was their authority," nor by the declarations of the officer himself in the absence of evidence showing that he had authority to speak for the company.

*Appeals from District Court, Missoula County; Theodore Lentz, Judge.*

ACTION by the United States Fidelity & Guaranty Company against Leonel Bourdeau. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Reversed.

*Mr. Chas. N. Madeen* and *Mr. R. C. W. Friday,* for Appellant, submitted a brief; *Mr. Chas. A. Russell,* of Counsel, argued the cause orally.

The argument for release alleged in the answer and testified to by defendant, is only what a surety, sued on bond jointly with principal, is entitled to demand of the principal, and only what the principal is in good faith bound to do in defending the action to save the surety on his bond harmless, especially when, as in case at bar, there is an express agreement therefor, was without consideration, a mere *nudum pactum,* of no force or effect, and void. The rule is elementary that neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise in his favor. (*Hoskins* v. *Powder Land & Irr. Co.,* 90 Or. 217, 176 Pac. 124; *Allen* v. *Farmers & Merchants' Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621; *Utah Savings & Trust Co.* v. *Bamberger,* 29 Utah, 370, 81 Pac. 887; *Blyth* v. *Robinson,* 104 Cal. 239, 37 Pac. 904; *Burke* v. *M. E. Leming Lumber Co.,* 121 Ark. 194, 180 S. W. 499; *Olive* v. *Morgan,* 8 Tex. Civ. 654, 28 S. W. 572; *Early* v. *Burt,* 68 Iowa, 716, 28 N. W. 35.)

The almost universal rule is that an attorney employed as such to represent his client in an action pending or to be commenced has no power to enter a *retraxit* or to compromise his client's cause of action without special authority from his client, and the alleged agreement of Attorney Blackledge, who represented both parties to suit, to release defendant, even if deemed proven, was without authority and void. (*Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429; *Jubilee Placer Co.* v. *Hossfeld,* 20 Mont. 237, 50 Pac. 716; *Pomeroy* v. *Prescott,* 106 Me. 401, 138 Am. St. Rep. 347, 21 Ann. Cas. 574, and notes, 76 Atl. 898; *Smith* v. *Abbott,* 221 Mass. 326, 109 N. E. 190; *Storey* v. *United States F. & G. Co.,* 32 Idaho, 388, 183 Pac. 990; *Welch* v. *Johnson,* 93 Or. 591, 183 Pac. 776, 184 Pac. 280; *York Bank* v. *Appleton,* 17 Me. 55; *Hahn*

v. *Loker,* 229 Mass. 363, 118 N. E. 661; 2 Mechem on Agency, 2d ed., sec. 2163.)

Specifically under section 3606, Cobbey's Annotated Statutes of Nebraska of 1909, received in evidence in this case, no evidence of any agreement even within his general powers is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk or entry thereof upon the records of the court. (*German-American Ins. Co.* v. *Buckstaff,* 38 Neb. 135, 56 N. W. 692; *Fire Assn.* v. *Ruby,* 58 Neb. 730, 79 N. W. 723; *Alter* v. *State,* 62 Neb. 239, 86 N. W. 1080; *Henry etc. Co.* v. *Halter,* 58 Neb. 685, 79 N. W. 616; *Stoll* v. *Sheldon,* 13 Neb. 207, 13 N. W. 201; *Hamrick* v. *Combs,* 14 Neb. 381, 15 N. W. 731; *Cram* v. *Sickel,* 51 Neb. 828, 66 Am. St. Rep. 478, 71 N. W. 724; *Smith* v. *Jones,* 47 Neb. 108, 53 Am. St. Rep. 519, 66 N. W. 19; *Rich* v. *State Nat. Bank,* 7 Neb. 205, 29 Am. Rep. 382.)

There was no authority shown in attorney Blackledge to make the agreement of waiver and release, and without special authority the agreement was not binding on appellant. (*Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429; *Storey* v. *United States F. & G. Co.,* 32 Idaho, 388, 183 Pac. 990; *Burke* v. *M. E. Leming Lumber Co.,* 121 Ark. 194, 180 S. W. 499; *Pomeroy* v. *Prescott,* 106 Me. 401, 138 Am. St. Rep. 347, 21 Ann. Cas. 574, 76 Atl. 898; *Welch* v. *Johnson,* 93 Or. 591, 183 Pac. 776, 184 Pac. 280; *Halleck* v. *Loft,* 19 Colo. 74, 34 Pac. 568; *Fleishman* v. *Meyer,* 80 Pac. 209; *Gibson* v. *Nelson,* 111 Minn. 183, 137 Am. St. Rep. 549, 31 L. R. A. (n. s.) 523, 126 N. W. 731; *York Bank* v. *Appleton,* 17 Me. 55; *Smith* v. *Abbott,* 221 Mass. 326, 109 N. E. 190; *Preston* v. *Hill,* 50 Cal. 43, 19 Am. Rep. 647; *Jones* v. *Inness,* 32 Kan. 177, 4 Pac. 95.)

*Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1907 Leonel Bourdeau, a retail liquor dealer in Campbell, Nebraska, made application to the United States Fidelity

& Guaranty Company (herein called the Company) for a bond required by the laws of Nebraska, and in his application agreed that, if the bond was furnished, he would indemnify and save harmless the Company against any loss which it might sustain by reason of having furnished the bond. The application was approved, the bond furnished, and Bourdeau received a license to conduct his business. In 1908 August Henkel sustained serious personal injuries while intoxicated, and on account thereof his wife, in her own right and on behalf of her minor children, instituted an action in the district court of Franklin county, Nebraska, against Bourdeau, the Company and others, claiming that Bourdeau and the other individual defendants had violated the liquor laws, in consequence whereof Henkel was made helplessly intoxicated, resulting in the injuries which he received. Such proceedings were had in that action that Mrs. Henkel recovered a judgment for $4,000 and costs, and on appeal the judgment was affirmed. (88 Neb. 784, 130 N. W. 753.)

In 1909 August Henkel himself brought a like action against the same parties, alleging substantially the same facts, and recovered a judgment for $1,500 and costs, and that judgment likewise was affirmed on appeal. (94 Neb. 338, 143 N. W. 236.) The Company was compelled to, and did, pay each of these judgments. In the meantime Bourdeau removed to Montana, and thereafter the Company commenced this action to recover the amount of its loss.

In the complaint the history of the transaction is set forth in detail. In his answer Bourdeau denies many of the allegations of the complaint, and sets forth as a special defense that, after the two actions had been commenced in Nebraska, the Company agreed that, if he would assist in the defense of each action by giving his own testimony, procuring other material witnesses and contributing $200 toward payment of the Company's attorney, he would be released and discharged of all liability in the event adverse judgments should be recovered and those judgments paid by the Company. He alleges further

that he performed all the obligations imposed upon him by the agreement, particularly that he procured the attendance of a large number of witnesses at the trials at his own expense, amounting to $750, and paid $200 toward the attorney's fee, by reason whereof he was released from any and all liability to the Company. These allegations were put in issue by the reply. The trial resulted in a verdict for defendant, and from the judgment entered thereon, and from an order denying a new trial, plaintiff appealed.

The evidence discloses without any conflict whatever that the Company was compelled to and did discharge in full each [1] of the judgments recovered in the Nebraska court, and that neither Bourdeau nor anyone else has repaid any part thereof. The only controversy revolves around the existence and effect of the agreement pleaded as a special defense. To sustain that plea defendant testified that he employed L. H. Blackledge, an attorney, of Red Cloud, Nebraska, to represent him in each of the two cases mentioned; that each of the other individual defendants and the Company also retained the same counsel, and that the agreement for his release was made with Blackledge. He testified: "I said that Mr. Blackledge came over to my place about two months after the action was instituted. * * * I told him I was going to get—drop out—and of course he absolutely didn't want me to do this; he wanted me in, and my being born and raised there from boyhood up would help in this case. He told me that; he said this to me, and promised to me that if I would stay with him, fighting this thing—that was, procure these jurors—not jurors—the witnesses; all these witnesses and even his minister, and you will notice he was on deck there—and, in fact, if I would take charge of it, and look after everything, if I would do that he would see to it that I would get out of this thing all right; get out of it clear. * * * He said he wouldn't hold me for anything at all on this bond, on this trial that was coming off." He testified further that he interviewed witnesses,

procured their attendance at the trial at his own expense, in fact, performed his part of the agreement.

Waiving aside the inherent improbability of the story and the question of the propriety of the jury accepting it, and assuming, for the purpose of this case only, that the agreement existed as indicated by defendant's testimony, that it was not binding upon the plaintiff is too plain to admit of controversy. Prior to paying the Henkel judgments the Company held Bourdeau's contract to indemnify and save it harmless. Upon paying these judgments it had an immediate right of action against him to recover the amounts paid. In either event it had a substantial, subsisting right. So far as the evidence tends to prove anything, it indicates that the only authority possessed by Blackledge to represent the Company was such authority as was conferred by his retainer as attorney for the Company. It is a rule recognized by all courts, and text-writers upon the subject, that an attorney, by virtue of his retainer, has no authority to release such a substantial right existing in favor of his client. The decided cases sustaining the rule are too numerous to be cited. We content ourselves by a reference to the following: 6 C. J. 663; Weeks on Attorneys, secs. 219, 239; *Jubilee Placer Co.* v. *Hossfeld,* 20 Mont. 234, 50 Pac. 716; *Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429; *Stoll* v. *Sheldon,* 13 Neb. 207, 13 N. W. 201; *Henry & Coatsworth Co.* v. *Halter,* 58 Neb. 685, 79 N. W. 616. If the contract was ever entered into at all, it was [2] made in Nebraska, was performed in and was subject to the laws of that state. But the statutes of Nebraska do not enlarge the authority of an attorney beyond that indicated by the general rule above. Section 3606, Cobbey's Annotated Statutes of Nebraska of 1907, provides: "An attorney or counselor has power—I. To execute, in the name of his client, a bond for an appeal, *certiorari,* writ of error, or any other paper necessary and proper for the prosecution of a suit already commenced. II. To bind his client by his agreement in respect to any proceeding within the scope of his proper

duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court. III.   To receive money, claimed by his client in an action or proceeding, during the pendency thereof or afterwards, unless he has been previously discharged by his client, and upon payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment.''

In *German-American Ins. Co.* v. *Buckstaff,* 38 Neb. 135, 56 N. W. 692, that section was construed by the Nebraska court. After quoting it at length, the court said: ''The language of this section is unambiguous, and its meaning is too plain to admit of more than one construction.   A client is only bound by the oral stipulations of his attorney made out of court, when the same are established by the testimony of the attorney making the same.   The purpose and object of the legislature in adopting the above section was to relieve the courts from enforcing oral agreements of attorneys entered into out of court, in regard to a matter pending in court, in all cases except where the contract is established by the evidence of the attorney of the client against whom it is sought to be enforced.   The language used by the legislature is: 'No evidence of any such agreement is receivable except the statements of the attorney himself.'   Without doing violence to the language employed it cannot be construed to mean that an agreement made by an attorney can be established by the testimony of others who were present and heard it.   To hold that it can would be contrary to the spirit as well as the letter of the statute.''

It must be conceded that Blackledge had no authority to enter into the agreement if it was in fact made, and that, if made, it was without any effect as against the Company and did [3]   not release Bourdeau from his liability.   Of course, it was possible for the Company to ratify the unauthorized act of Blackledge, but there is not any evidence that it did so.   The

only evidence offered tending to prove ratification is the following by the defendant Bourdeau: "I afterward talked to someone else about it; I went to Omaha and I saw Mrs. Henry Rolf there.  *  *  *  She was one of the officers of this American Security Bonding Company in Omaha. I said of the American Surety Company—this bonding company, whatever it is—the United States Fidelity & Guaranty Company. And I went to see her there in her office, and she told me that anything this man Blackledge done was absolutely all right; that he was their authority, and looked after their business in our part of the country." On cross-examination he testified: "About this woman in Omaha, her name was Mrs. Henry Rolf. She did not tell me she was an agent for the Company; she was one of the officers of the Company, but I want you to bear in mind I don't know what she was—one of the officers of the Company they told me, however. As to how I know she was one of the officers of the Company, I will say to the best of my knowledge. Here, this is a long time ago. You see, I went—I must have been there for the purpose of seeing this woman about it; it is about 200 miles. Her husband, Henry Rolf, was a wholesale liquor dealer; I probably found out some way she was vice-president of the Company; I don't of my own personal knowledge know anything about it, except what others told me, and I don't know who told me, either; I couldn't swear now who told me; I know there was no doubt in my mind whether or not she was when she talked to me. I know she made it plain enough and clear enough, but her authority I don't know."

This evidence fails altogether to prove ratification by anyone authorized to speak for the Company. However positive may be the first statement of the witness that Mrs. Rolf was an officer of the Company, its force is destroyed completely by his statement made later that he knew nothing whatever about her position. (*First Nat. Bank* v. *Bullard,* 20 Mont. 118, 49 Pac. 658.) Mrs. Rolf's agency, if any such existed, could not be established by her own declarations (2 C. J. 935; 21

R. C. L. 821), and, *a fortiori*, it could not be established by the declarations of others, strangers to the Company so far as disclosed by this record.

The plaintiff made out the cause of action stated in its complaint. The evidence offered by the defendant failed to establish any defense, and the verdict in his favor cannot be sustained.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES FARR, COOPER and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.