THE JONES & MAGEE LUMBER COMPANY v. MURPHY ET AL.

| | |
|---|---|
| 64 | 165 |
| 88 | 233 |
| 64 | 165 |
| 91 | 555 |
| 64 | 165 |
| 96 | 658 |
| 98 | 171 |
| 64 | 165 |
| 112 | 124 |

1. **Mechanic's Lien:** SUB-CONTRACTOR: NOTICE IN THIRTY DAYS: WHAT IS: SUCCESSIVE CONTRACTS ON SAME BUILDING. Where a contractor agreed to build a house for a certain sum, and, after that was done, agreed to build a porch to the same house, and plaintiff furnished the last of its bill of lumber for the first contract June 16th, but furnished lumber for the porch June 27th and 29th; and July 22d it served its notice on the owner that a lien would be claimed on account of all the lumber, (which was all charged in one account,) and July 29th it filed its statement for a lien, *held* that, since there was but one house, and since the interval between the last item furnished for the house proper and the first item for the porch was less than 30 days, and since the notice was served in 30 days after furnishing the last lumber for the porch, the whole account should be regarded as one, notwithstanding the successive contracts, and that the notice was served in time to bind the owner as to the whole claim.

2. ——: ——: OWNER CHARGED WITH NOTICE OF MUST WITHHOLD STIPULATED PAYMENT FROM CONTRACTOR. An owner who knows that materials have been furnished to his contractor within 30 days is charged with notice that the material-man may have a lien therefor, (*Gilchrist v. Anderson*, 59 Iowa, 274,) and within that time he cannot safely pay to his contractor an installment upon the contract price, even though it falls due under the terms of the contract.

3. ——: ——: WAIVER OF: FACTS NOT CONSTITUTING. Facts considered (see opinion) and *held* not to amount to a waiver by the material-man of his right to claim a lien.

4. ——: ——: AGREEMENT FOR NOTE AND MORTGAGE TO CONTRACTOR: LIEN AVOIDED PRO TANTO: QUESTION OF PRIORITY. Where the contractor had the right, at his option, under his contract, to take a note and mortgage upon the property, after the work was done, for a certain portion of the contract price, *held* that the subcontractor was bound to take notice of this element in the contract, and that he could not have a lien for such portion of the contract price as was thus secured to the contractor by note and mortgage, even though made after the work was all done; but that a lien for materials furnished, and which bound the

owner and the property for a portion of the contract price not thus se-
cured, was superior to the lien of the mortgage, even as against an as-
signee thereof charged with constructive notice of the facts.

*Appeal from Union Circuit Court.*

THURSDAY, JUNE 12.

ACTION upon an account for lumber, and to enforce a me-
chanic's lien. The plaintiff furnished lumber as a sub-con-
tractor to the defendant, Winkley, as contractor, to be used in
the erection of a dwelling house for the defendant, Murphy.
The court rendered judgment against Winkley for $754.94,
but denied the plaintiff a mechanic's lien. The plaintiff ap-
peals from the ruling denying a lien.

*D. W. Higbee* and *R. H. Hanna*, for appellant.

*McDill & Sullivan*, for appellees.

ADAMS, J.—The evidence shows that the house, with the
exception of the porch, was, so far as Winkley's contract was
concerned, finished about June 20, 1882. Af-

1. MECHAN-
IC'S lien:
sub-contract-
or: notice in
30 days: what
is: successive
contracts.

terwards Winkley, under a subsequent contract,
built a porch to the house, which was finished
about June 29. At the time the work under the
first contract was completed, or soon thereafter,
Murphy settled with Winkley for such work and materials,
paying him $300, and giving him notes secured by a mort-
gage upon the building for the balance, to-wit, $800, which
notes and mortgage were sold to, and are now the property
of, the defendant, Wesner. The amount due from Murphy
to Winkley on the porch has not been paid. The last item
of lumber furnished that went into the house prior to the
erection of the porch was, we think, furnished June 16. The
lumber that went into the porch appears to have been fur-
nished June 27th and 29th. The notice that a lien would be
claimed was served July 22d, and the statement for a lien was

filed July 29th. While Murphy averred in his answer that he had no knowledge that the plaintiff was furnishing Winkley lumber for the building, his testimony as a witness upon the stand showed otherwise. He said: "I knew that Winkley was getting the lumber from the plaintiff. I knew that at the time it was going into the house."

As to to the amount due from Murphy to Winkley on the porch there is no evidence, and no decree of any kind could have been rendered thereon. The whole controversy, then, is as to a lien in respect to what became due from Murphy to Winkley upon the house under the first contract. As to that it is insisted that the plaintiff did not serve notice of a lien within the statutory time, to-wit, thirty days from the time the last item was furnished. That item, as we have seen, appears to have been furnished June 16, and the notice was not served until July 22d. But the last furnished for the house, under the first contract, was not the last item of the account. The plaintiff furnished lumber in a general way for the house, including the porch, at different times from March 14 to June 29, and charged the same in one account. It is not material, we think, that in some sense there were two jobs done by Winkley, so long as there was but one building; and what was furnished for the porch was furnished for the building, and within the thirty days from June 16, which would have been allowed to plaintiff for giving notice, if no lumber had been furnished later than June 16. Had more than thirty days elapsed from June 16 before any lumber was bought for the porch, and no notice in the mean time had been served, it may be that Murphy might properly have assumed that the plaintiff did not intend to claim a lien. But, while the plaintiff had still several days to give notice of a claim for a lien for lumber furnished for work under the first contract, more lumber was called for for the same building. We think that the plaintiff very properly concluded that one notice was sufficient for all, and that it had thirty days from the furnishing of that item of lumber which was the last of

all.   Where a single building is erected by one contractor, though, as often happens, under more than one contract, we think that it would be a great hardship upon the sub-contractors to require them to take notice of, and bear in mind, at their peril, precisely where, in the construction of the building and use of material, one contract ends and the other begins.   If they could watch the progress of the work day by day with the contractor's contracts in their hands, they probably could not always determine the facts requisite for their protection.   Materials are bought in advance of the actual work in which they are used, and frequently, no doubt, are changed and mixed beyond identification.   We think that the notice was served within the proper time.

It is contended, however, by Murphy, that he had a right to settle when he did, even though the thirty days had not expired, and though notice was afterward served within the thirty days.   This position is based upon the theory that the owner may pay the contractor as well before the expiration of the thirty days as after, if no notice has been served, and if he does not pay in advance of the time stipulated in the contract.   He relies upon *Stewart & Hayden v. Wright*, 52 Iowa, 335.   But the court did not go farther in that case than to hold that the owner may settle in accordance with the terms of his contract, if he has no knowledge, and no reason to suppose, that there are sub-contractors.   In the case at bar, Murphy knew that the plaintiff was furnishing the lumber at the time it was going into the building. The fact, then, that he paid in accordance with the terms of the contract, is not sufficient to protect him.

*2. ——: ——: owner charged with notice of must withhold stipulated payment from contractor.*

It was said in *Winter v. Hudson*, 54 Iowa, 336: "While it is true that the owner may make such contract as he may see proper, and the sub-contractor is bound thereby, yet, if the contract recognizes that there may be sub-contractors, whom the owner may be required to pay, and such owner has knowledge that certain persons, as sub-contractors, have furnished

materials which were used in the construction of the building, he cannot pay the contractor with impunity during the thirty days period." The case at bar differs from that in this, that it does not appear that the contract recognized that there might be sub-contractors whom the owner might be required to pay. But it was not held in that case that such fact was of controlling importance. The fact was in the case, and there was no reason for determining what the rule would be in the absence of it. Where the contract expressly recognizes the fact that there may be sub-contractors, the owner becomes apprized at once that the contractor has some expectation of procuring labor or materials, or both, upon credit. The recognition is a circumstance to be considered, with others, in a proper case, in determining whether the owner was not put upon inquiry. But where, as in this case, the owner admits that he had knowledge that the material was being furnished by the person claiming as a sub-contractor, he must be deemed to have had knowledge of the lien; (*Gilchrist v. Anderson*, 59 Iowa, 274;) and we cannot think that we should be justified in holding that he could properly pay before the end of the thirty days, even though his contract called for payment before that time, and made no reference to sub-contractors. Notice served after the thirty days, with statement filed, gives a lien upon the balance, if any, due the contractor. We cannot hold that notice served before that time has no greater effect. Some force must be given to the thirty days limitation. Nor is it satisfactory to say that notice served before would give a lien where payments had been made in advance of the time stipulated. We cannot think that this was all that the legislature had in mind in providing the thirty days limitation. The true idea seems to be that thirty days is deemed a reasonable time to allow the sub-contractor to serve the notice. If the owner has knowledge of sub-contractors, or, what is virtually the same thing, of facts sufficient to put him upon inquiry, we think that he should withhold payment during the thirty days. After that, if no notice be served, he may, of course, proceed,

whatever his knowledge may be, for he would be justified in assuming that the right to a lien was waived.

As a further ground of defense against the lien, Murphy contends that the plaintiff precluded itself from insisting upon a lien by what it did about the time the notice was served. It seems that, about that time, trouble began to be apprehended by all parties. A great effort was made by the plaintiff and Murphy to get hold of the notes and mortgage which Murphy, a few days before, had given Winkley. These notes and mortgage were represented by Winkley to be deposited in the bank of Creston. An effort was made to get an order for them from Winkley. He was finally induced to give the plaintiff an order on the bank for the proceeds of the notes, representing them to be negotiated. When this order was obtained, the plaintiff and Murphy felt very much encouraged, and the evidence tends to show that the plaintiff's book-keeper represented to Murphy that it would not be necessary for the plaintiff to resort to a mechanic's lien. Murphy relies upon the receipt of the order and the representations of the book-keeper as sufficient to preclude the plaintiff from insisting upon the lien. But the plaintiff, although making diligent efforts, realized nothing upon the order. Winkley managed in some way to sell the notes to the defendant, Wesner, and obtain the proceeds. We infer that this had already been done when he gave the order, but the evidence is very meager upon this point. At all events, the order proved to be useless. As to the representations by the book-keeper, it is sufficient to say that it does not appear that he had the power to waive the lien by anything which he could say.

One ground of defense against the lien remains to be considered, and that is, that the notes and mortgage were given in accordance with the contract entered into for the erection of the building, and must be deemed to have precluded a mechanic's lien from attaching in favor of the contractor, and, by consequence,

3. ——: ——: waiver of: facts not constituting.

4. ——: ——: agreement for note and mortgage to contractor: lien avoided pro tanto.

from attaching in favor of the plaintiff as sub-contractor. The contract appears to have been that Murphy should pay Winkley $1,600 for the erection of the building; that he should pay $500 in advance, and $300 on the completion of the work, and give notes and mortgage for the balance, the notes to draw ten per cent interest, or allow Winkley to have a mechanic's lien, as he should prefer. Winkley elected to take the notes and mortgage, and they were accordingly executed.

Under this state of facts, we are unable to see that the plaintiff can have a lien for more than $300. That is the only money which become due from Murphy to Winkley after the plaintiff's account commenced. The amount which became due in advance, and was so paid, certainly never became subject to the plaintiff's lien.

The mortgage, though executed after the work was done, was stipulated for in the outset. As soon as Winkley entered upon the performance of his contract, he acquired an equitable right to have the mortgage and notes bearing ten per cent interest, which right was subject only to the completion of his contract. His equitable right to have the mortgage and notes precluded his right to have a mechanic's lien at the same time for the same indebtedness. It is true, he merely stipulated for an option. But, having elected to take the notes and mortgage, we think that we must treat the case the same as if he had stipulated for the notes and mortgage without any option. Now, while it may be that a mere stipulation on the part of a contractor not to claim a mechanic's lien would not preclude sub-contractors from doing so, we think that they are precluded where the contractor stipulates in the outset for a mode of payment inconsistent with a mechanic's lien. The contractor might stipulate for payment in labor, or some specific property other than money. If he should do so, such contract would be inconsistent with a mechanic's lien on the part of a sub-contractor. In the case at bar, Murphy contracted to pay a part by giving his ten per cent promissory

notes and mortgage. Sub-contractors must take notice of the modes under which the contractor has a right to require the owner to discharge his liability under his contract, and must extend or withhold credit according as they see fit, in view of the contract. We reach the conclusion that the plaintiff is entitled to a lien for $300, and only that.

As to the question of priority, we have to say that we think that the lien is paramount to the mortgage now in the hands of the defendant, Wesner. A mechanic's lien, as against parties chargeable with notice of it, dates from the time the labor or materials are furnished. While the mortgage was in the hands of Winkley, there is no question but that the plaintiff's lien was paramount. The defendant, Wesner, purchased with constructive notice of the plaintiff's rights, and came to occupy, we think, no better position than Winkley.

REVERSED.