MASON CITY BRICK & TILE COMPANY, Appellant, v. C. O. LAMSON et al., Appellants.

APPEAL AND ERROR: Scope of Review—Constitutionality or Construction of Statute. The constitutionality of a statute may not, in a civil action, be raised for the first time on appeal; but this rule does not prevent the consideration on appeal of the point that, as between constructions which would lead to constitutionality or unconstitutionality, the latter will be avoided, if reasonably possible.

CONSTITUTIONAL LAW: Impairment of Contract—Voluntary Act Under Contract. A retroactive statute may not be said to impair a contract, when the statute operates solely on what the party to the contract *voluntarily* does under the contract.

MECHANICS' LIENS: Voluntary Payments by Owner. An owner who is permitted by his building contract to retain as security for faithful performance 15 per cent of the contract price "until 30 days after completion of the work," and "until the payment of all claims," will not be permitted to say, against the claims of subcontractors, that payments by him to the principal contractor in excess of 85 per cent, and in disregard of said reservations, were *compulsory*.

MECHANICS' LIENS: Implied Knowledge of Lienable Claims. An owner, under a building contract which provides (1) that subcontractors shall be employed, and (2) that the said owner may reserve a named percentage of the contract price for 30 days after the full completion of the work, is *ipso facto* obligated to make due inquiry as to the claims of subcontractors.

MECHANICS' LIENS: General Knowledge of Purchases by Contractor. An owner who, in his building operations, knows no more than

that the contractor is buying from *some* source practically all the materials which are going into the structure, is charged with knowledge that payments under the contract may jeopardize the rights of subcontractors.

**MECHANICS' LIENS:** Obligation of Owner Prior to Amended Statute. Sec. 3093, Code, 1897, as amended by Ch. 267, Acts 35 G. A. (1913), charging the owner with all properly filed and established claims of subcontractors, in case the owner makes payments to the contractor prior to the expiration of the time for filing such claims, imposes no greater obligation on an owner than was imposed prior to said amendment, when such owner (1) operated under a contract which provided for subcontractors; (2) protected himself by contract from possible liability on such claims; and (3) had full knowledge that the contractor was buying practically all his materials from subcontractors.

**MECHANICS' LIENS:** Expenditures by Owner in Completing Building. The plea that, on the bankruptcy of the contractor, the owner was compelled to pay such a large sum in completing the work as to leave nothing for subcontractors, is unavailing, when the owner, prior to the abandonment of the work by the contractor, had ample right and power to reserve payments sufficient to protect known subcontractors, and did not do so.

**MECHANICS' LIENS:** Burden of Proof. An owner who claims that payments made by him prior to the time Ch. 267, Acts 35 G. A. (1913), became effective are not controlled by said chapter, must assume the burden to so segregate his payments that the court may see what payments were made *prior* to the effective date of said chapter and what payments were made *after* said date.

**MECHANICS' LIENS:** Applicability of Statute. Chapter 267, Acts 35 G. A. (1913), providing that an owner who pays the contractor prior to the expiration of the time for subcontractors to file claims is liable for all such duly filed and established claims, controls payments made *after* the date when said chapter took effect, even though the contract was entered into prior to said date.

**APPEAL AND ERROR:** Harmless Error—Failure to Enter Judgment. A plaintiff who has been given judgment against two admittedly solvent parties suffers no reversible prejudice by being denied judgment against a third defendant on the same claim.

**APPEAL AND ERROR:** Error Point First Made on Appeal. A judgment defendant may not, on appeal, assign error on the court's failure to enter judgment for plaintiff against another defendant, with whom said judgment defendant has litigated no issue in the trial court.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

DECEMBER 20, 1920.

THE appellant obtained judgment against the Lamsons and the Equitable Surety Company, on account of materials furnished as subcontractor in the construction of a hotel building owned by the Lamsons. It appeals because it was not also given judgment against the defendant Maryland Casualty Company. The Lamsons and the Surety Company cross-appeal, asserting that plaintiff should have had no judgment against them.—*Affirmed.*

*Pickett, Swisher & Farwell* and *Williams & Clark,* for appellants.

*C. H. E. Boardman,* for appellee.

SALINGER, J.—I. The defendants appellants Lamson were and are the owners of a hotel building. They contracted with Dunphy to construct said building. He proceeded with the contract for a time, then abandoned it, became bankrupt, and the Lamsons were compelled to and did complete the building. The plaintiff furnished materials as a subcontractor. He had no right to a lien, because the Lamsons filed release bond under Section 3093 of the Code, with appellant Equitable Surety Company as surety. But plaintiff demanded and obtained judgment for $5,276.33 against Lamson and said Surety Company. It is conceded plaintiff is entitled to that sum from someone. But the Lamsons contend they are not liable to plaintiff. If that is so, of course, the said surety of the Lamsons is not liable either.

The major defense is this: The contract between Lamsons and Dunphy, the principal contractor, was made April 26, 1913. The appellants say that whatever was the law on that day governs during whatever time was needed to perform said contract; that, under the law existing when the contract was made, and existing so far as this contract is concerned at all times material, the Lamsons rightfully made payments under the contract to the principal contractor; that these payments and what was

necessarily expended to complete the work after the principal contractor abandoned his contract greatly exceeded the contract price; and that, therefore, the Lamsons owe the plaintiff subcontractor nothing. They concede they may not take this position if Chapter 267, Acts of the Thirty-fifth General Assembly, controls. The contract was made on April 26, 1913. Said act of assembly was approved, April 18, 1913, and became effective on July 4, 1913; so that the contract was made after the approval of the new law, but before it became effective. Work under the contract was done before the new law became effective, and the main part after said statute went into effect. As said, the Lamsons insist that, as the new law was not effective when they contracted, it never became effective as to that contract. And they contend that, if said act of the thirty-fifth general assembly be construed to govern the transaction at bar, such construction will affect the substance of their contract, and so impair a valid contract obligation. The appellee responds, among other answers, that the new statute works no impairment; that, at most, it compels the owners to insist upon safeguards of the rights of subcontractors which, before the enactment of the statute, such owner could, but was not compelled to, insist upon. We will reach the real battle field earlier by disposing of some matters now.

## 1-a

The validity of the new statute cannot be passed upon; because, if its constitutionality be challenged at all, it is first done here, and that may not be done in suit on the civil side. See cases collated in *State v. Gibson*, 189 Iowa 1212. But this rule of appellate court practice does not stand in the way of the rule that, in construing statutes, a construction that may raise serious doubts as to the constitutionality of the statute should be avoided, if that may in reason be done. That is to say, though appellants may not assert that the act violates the Constitution, and therefore should be given no application, even if it be applicable, they can urge that, on proper construction, the act should not be construed to affect contract obligations, because so to hold would settle, though other construction is,

1. APPEAL AND ERROR: scope of review: constitutionality or construction of statute.

in reason, permissible, that the statute violates constitutional guaranties, and will be nullified on proper attack.

### 1-b

If appellants have no contract obligations, no statute works an impairment, for nothing can affect what does not exist. Thus we reach whether anyone who has a contract *obligation* to perform is complaining that the statute impairs such obligation. Assume that, under the older statute, the Lamsons were protected in making payment to the principal contractor though they made it before the lapse of the 30 days given the subcontractor wherein to file lien. The new statute will not protect against the subcontractor if payment is made to the principal contractor before said 30 days have lapsed. The sole question, then, is whether the new statute attempts to affect, and, if it does, whether it can affect, the safety of the payments made prior to the taking effect of the new statute. That question is a moot one, if the Lamsons were under no contract *compulsion* to pay as they did pay before the new statute took effect. Retroactive dealing with the effect of voluntary payments is, whatever it may be, not an impairment of a contract *obligation*.

2. CONSTITUTIONAL LAW: impairment of contract: voluntary act under contract.

II. Most clearly, this question should not be passed upon if the decision of avoidance propositions in a given way will make such question an immaterial one. The avoidances are: (a) That, under the law existing when contract was made, the owner was never *compelled* by contract to make the payments he did make to Dunphy; (b) that, while the contract did not forbid the payments, it justified withholding payment, in the interest of both the owner and of subcontractors, and made it the duty of the owner to withhold enough to assure the payment of subcontractors; and (c) that enough was paid out to Dunphy after the new law took effect, and paid out before the 30 days wherein subcontractors had the right to file lien, to pay all subcontractors, had said payments been withheld, as the contract permitted. In effect, this is a claim that appellants are liable under the law as it stood before the new statute was made, and that they are li-

3. MECHANICS' LIENS: voluntary payments by owner.

able under the new statute, without giving that statute any retroactive effect. Of course, if either position is tenable,—more so if both are,—we have no occasion to say whether the trial court did give said statute a retroactive effect, nor whether that may rightly be done. Before touching this inquiry, we must dispose of these avoidances.

Without reference to the new statute, it was possible so to exercise the right to pay the principal as that the subcontractor could have such payments disregarded. That was always so, if the owner paid when he knew or should have known that subcontractors *might* make timely claim, and that payments to the principal contractor would deprive such possible claimant of satisfaction, and paid under a contract which, while it authorized payment to the principal contractor, also authorized taking adequate precaution against his being paid what subcontractors might need and later claim. To this appellant responds: (a) That Lamson may not be charged with such knowledge, or with negligence in not obtaining it; and (b) that, even assuming knowledge, the payments made were on contract *compulsion,* and had to be made, no matter how payment might affect subcontractors who should perfect claim after such payments had been made. It will conduce to clear, coherent treatment to take up these responses in inverse order.

### 2-a

Assume that, if the contract *compelled* the payments that were made to the principal contractor, the owner cannot be ·held by a subcontractor as to what was paid the principal—did the contract so compel? We say there was no such compulsion. The contract permitted the owner to retain 15 per cent "as part security for the faithful performance thereof," and this 15 per cent should not be paid "until expiration of 30 days after the perfect completion of said work," and until "the payment of all claims for labor and material furnished." Also, that the building should be delivered "free from all claims, liens and charges," and delivered "free from expense" to the Lamsons. And it was contracted that the principal contractor should employ subcontractors in the execution of any part of the work to the approval of the architects. Surely, such contract did not forbid

reserving the 15 per cent for the good of subcontractors for labor or material, but expressly required the owner to retain that percentage for at least 30 days "after the perfect completion" of the contract. This conclusion is fortified by another provision, which, though not so mandatory, is yet quite important. It is this:

"If the contractor shall allow indebtedness to accrue for labor or materials which become liens on said building, or the ground upon which it stands, the Lamsons may refuse to make the payments as hereinbefore agreed until satisfactory evidence has been furnished that said indebtedness has been discharged, and if such evidence is not furnished him within a period of ten days after demand therefor in writing, the Lamsons may discharge such indebtedness and deduct the amount required therefor from the contract price."

Had the owners obeyed the contract by reserving the 15 per cent until "the payment of all claims for labor and material furnished," made known within 30 days after perfect completion of the contract work, there would now be available, roughly, some $5,000 more than is needed to pay the $24,308.41, which is the total of all the unpaid claims. Had that reserve been made, neither old nor new statute would hurt the appellants. The Lamsons had the contract right to refuse paying anything until they were assured by evidence "satisfactory" to them as to the matters before stated. Had Lamsons proceeded as authorized by the contract, they would not now need to litigate with the unpaid claimants. They would not need to assert as a defense that they had no knowledge or means of knowing that such claims existed, or might exist.

III.   Assume, next, that want of knowledge or absence of means of knowledge will defend; and both the evidence and the law establish that neither was lacking. The contract provision that 15 per cent should be reserved until all claims for material and labor asserted within 30 days after the contract was perfectly performed had been paid, and the one that subcontractors should be used, put the owner on inquiry, until that 30 days was past, as to what claims for labor and material existed. And, as the contract was never completed by Dunphy, that 30 days had not

4. MECHANICS'
LIENS: implied
knowledge of
lienable claims.

yet lapsed. And by very strong implication, there was a contract duty to obtain evidence that debts for labor and material were not being permitted to remain unpaid, and to pay such debts. This manifestly put on inquiry as to the existence of such debts. Failure to ascertain what would· be known if that duty were performed is equal to knowing what could so have become known. *Warner v. Spalding & Kearns*, 186 Iowa 137. So, the Lamsons had what the law deems to be actual knowledge.

But appellants say that a stipulation on the subject does not establish such facts as constitute knowledge,—actual knowledge, in fact. It was stipulated that the Lamsons were without actual knowledge that the material for which the lien is claimed had not been paid for, until plaintiff filed its lien, on January 31, 1914; that they made no effort, prior to that date, to ascertain whether or not material furnished had been paid for; that, while they knew, during the month of January, 1914, that plaintiff was furnishing the principal contractor material to be used in the construction of the building, they were without knowledge as to the terms, conditions, and agreements under which plaintiff furnished said material to said principal contractor: and stipulated that the defendants Lamson at all times knew that the principal contractor was buying substantially all materials used in the construction of the building; that practically no materials were being used, except such as the contractor bought of divers parties; and the Lamsons knew that the materials which were, in fact, furnished by plaintiff were being bought from some party, but did not know that they were being bought from this plaintiff, or from whom they were bought.

5. MECHANICS' LIENS: general knowledge of purchases by contractor.

### 3-a

Under the law, the facts stipulated establish that payment was made with knowledge, or its equivalent, that such payment might jeopardize the rights of subcontractors. Payment to the principal contractor according to contract will not save the owner from paying also any subcontractor who later files lien, even if such owner knew not more than that subcontractors are furnishing material or labor. *Chicago Lbr. Co. v. Woodside*, 71 Iowa 359; *Nancolas & Howard v. Hitaffer & Prouty*, 136 Iowa 341; *Wheel-*

*ock v. Hull,* 124 Iowa 752; *Jones & Magee Lbr. Co. v. Murphy,* 64 Iowa 165; *Simonson Bros. Mfg. Co. v. Citizens State Bank,* 105 Iowa 264. We said in the *Woodside* case that it is not necessary the owner should know plaintiff had a claim; that, if that should be held, ''we should go far towards frittering away the whole mechanic's lien law so far as subcontractors are concerned.''

We added:

''The owner sees men furnishing labor or materials under the contractor, and neither sees nor hears anything more. Can he properly proceed to pay the contractor, upon the assumption that the men furnishing the labor or materials have been paid in advance, or contemporaneously with the furnishing of the labor or materials? We think not. Laborers are not usually paid in advance, nor strictly as the labor progresses, nor is material usually paid for in advance, nor as each item is furnished, where, as in this case, it is furnished from time to time, during a considerable period.''

The owner is liable to the subcontractor if he pays the principal contractor, knowing that subcontractors are furnishing material, even though he does not know that they have not been paid. *Othmer Bros. v. Clifton & Bishop,* 69 Iowa 656; *Chicago Lbr. Co. v. Woodside,* 71 Iowa 359; *Cedar Rapids S. & D. Co. v. Heinbaugh,* 183 Iowa 1236; *Wheeler L., B. & S. Co. v. White,* 164 Iowa 495; *Fay & Co. v. Orison,* 60 Iowa 136; *Andrews & Smith v. Burdick & Goble,* 62 Iowa 714; *Nancolas & Howard v. Hitaffer & Prouty,* 136 Iowa 341. In *Gilchrist v. Anderson,* 59 Iowa 274, the owner knew the contractor had to buy the material from someone, but he knew neither that any had been bought from plaintiff nor that any had been bought on credit. The owner was held liable. It was on the theory of having such knowledge as put on inquiry. The court declined to say that, while an owner is put on inquiry where he knows the names of the persons who have furnished materials, he is not put upon inquiry where he knows simply that materials have been furnished by someone; and it is said to be the test whether the owner could probably, in the exercise of reasonable diligence, have discovered that the plaintiffs were entitled to a lien.

We said in _Murphy's_ case, 64 Iowa 165, that, where the owner admits he had knowledge material was being furnished by persons claiming as subcontractors, he must be deemed to have had knowledge of the lien, citing _Gilchrist v. Anderson,_ 59 Iowa 274. And the final conclusion of the _Murphy_ case is, it should not be held that owner could properly pay before the end of the 30 days, even though his contract called for payments before that time, and made no reference to subcontractors. The analysis of _Othmer Bros. v. Clifton & Bishop,_ 69 Iowa 656, made in _Chicago Lbr. Co. v. Woodside,_ 71 Iowa 359, is that, where one or more officers of the church had knowledge that Othmer did painting on the church as a subcontractor, but did not know it was not paid in advance, nor as the work went on, payment was no protection against the subcontractor, because the church was bound to take notice that the painter might be acquiring a claim against the contractor for which the statute gave a lien. In the _Othmer_ case, it was further held that, if the owner has notice or knowledge of any claims of subcontractors, he should make no payments to either principal or other subcontractors. We said the owner ''should have made no payment so long as it knew that there were subcontractors who might establish a lien. It should have waited until all such liens were filed, and then discharged them according to their priority.'' And in the light of the foregoing, we are unable to concur in appellant's analysis of some of our cases. In our opinion, _Chicago Lbr. & Coal Co. v. Garmer,_ 132 Iowa 282, decides more than that subcontractors cannot insist on payment different in manner or greater in amount than that stipulated in the contract, except ''as this rule may be modified by knowledge that the subcontractor is furnishing material and labor on credit.'' For in that case we said:

''These payments were according to the terms of the contract, and, as affecting them, the only issue to be determined is whether, at the time of making them, the owner had knowledge that plaintiff was furnishing the material. If she was aware of this, the law seems to be well settled that payment to the contractor will not constitute a defense.''

Nor can we agree that all held in _Page & Son v. Grant,_ 127 Iowa 249, is that this is not so unless, when the owner pays, he

has acquired knowledge from certain contractors, not only that they were furnishing material for his building, but that same had not been paid for. For we said:

"The owner was not * * * justified in paying the principal contractor, even in strict accord with the terms of the contract," if he has knowledge that subcontractors are furnishing material for the building. "If the owner observes the law, he cannot, of course, be made liable to subcontractors in such a way or to such an amount as to increase or add to the contract price of the building. * * * But by failing to observe his original contract as to time of payment, or to follow the law as to the rights of subcontractors, he may become liable for more than the original contract price."

In *Jones & Magee Lbr. Co. v. Murphy*, 64 Iowa 165, there is a review, and it is held to be the rule that the owner may settle in accordance with the terms of his contract, "if he has no knowledge and no reason to suppose that there are subcontractors." It is held that, because the owner knew plaintiff was furnishing the lumber at the time it was going into the building, the fact that he paid in accordance with the terms of the contract is not sufficient to protect him.

Surely, it has been made plain that the contract with Dunphy distinctly recognizes, at the least, that there may be subcontractors. In *Winter & Co. v. Hudson*, 54 Iowa 336, such or less recognition held the owner, who merely knew that certain persons or subcontractors had furnished material used in the building. We said, in *Fullerton Lbr. Co. v. Osborn*, 72 Iowa 472, by the fact that the owner had provided in the contract (as here), he "has anticipated that there may be such liens, and has provided, so far as he can, that he may suffer no loss therefrom. In such case, he should inquire as to the existence of claims that may become liens. When such a provision is inserted in the contract, it may well be supposed that some good reason therefor existed, such as the insolvency of the contractor." (And there is insolvency of the contractor in this case.)

We said. in *Jones & Magee Lbr. Co. v. Murphy*, 64 Iowa 165:

"Where the contract expressly recognizes the fact that there may be subcontractors, the owner becomes apprised at once that

the contractor has some expectation of procuring labor or materials, or both, upon credit. The recognition is a circumstance to be considered, with others, in a proper case, in determining whether the owner was not put upon inquiry.''

In *Slagle & Co. v. DeGooyer,* 115 Iowa 401, at 403, it is recognized that, if the contract contemplates subcontractors, the owner must take notice that there will be subcontractors' claims, and is not entitled to make payments without investigation.

In *Queal & Co. v. Stradley,* 117 Iowa 748, the owner knew certain men were furnishing material for his building. He held more than enough to pay their claims. He had the right to, but did not, withhold this. And his contract had a provision authorizing him to protect against liens and charges against the principal contractor. The subcontractors prevailed. In *Wheelock v. Hull,* 124 Iowa 752, at 760, the importance of a clause providing for withholding funds by the owner is again emphasized. In *Winter & Co. v. Hudson,* 54 Iowa 336, the fact that the owner had provided in the contract that he had the right to pay mechanics' liens was regarded as a controlling circumstance. In *Fullerton Lbr. Co. v. Osborn,* 72 Iowa 472, it is pointed out what are the material points upon which the *Gilchrist* case and the *Winter* case are bottomed, and said that the first point in those cases was that contracts reserving the right to discharge mechanics' liens are to be regarded as controlling.

Without any use of the new statute, the trial court was justified in holding appellants liable to plaintiff. The rights and duties of the Lamsons and their knowledge were such, and so dealt with by them, as to make them liable to plaintiff. Their own conduct makes a case for any claimant for the true worth of labor or material put by such claimant into the Lamson building. The new statute has charged them with no liability that did not exist before.

6. MECHANICS' LIENS: obligation of owner prior to amended statute.

We are unable to see how it is material here that the Lamsons had the right to complete the work when Dunphy abandoned the contract, and that they expended so much money on that head as to leave nothing for subcontractors. If it were granted that the contract gave the Lamsons no power to protect

themselves for expenditures they might have to make after the

contract was breached, the fact remains that,.

7. MECHANICS'
LIENS: expendi-
tures by owner
in completing
building.

for the reasons stated, the Lamsons had power to reserve sufficient from the payments made before Dunphy broke his contract to have enabled them to pay the subcontractors here, without any loss to the Lamsons.

IV. It is stipulated that, about May 16, 1913, the plaintiff took an order from the principal contractor for certain materials to be used in the construction of this building, and, between May 20, 1913, and January 7, 1914, fur-

8. MECHANICS'
LIENS: burden
of proof.

nished and delivered to the principal contractor, pursuant to this order, said material, which was put into this building. The statement of the plaintiff exhibits that the first item was furnished on May 20, 1913, and it runs apparently continuously, so far as debit items are concerned, until January 7, 1914. The first credit item is September 3, 1913. The last is November 29, 1913. Lien statement was filed on January 31, 1914, and the Lamsons notified. They and the Equitable Surety Company answer that, up to the 14th of February, 1914, the Lamsons had, as they had the right to do, paid under the contract the sum of about $132,000 ($134,162.90). This sum was paid out as follows:

Prior to October 13, 1913, $57,891.43.

On October 13th, $5,000.

On October 20th, $5,251 and $5,000.

On November 10th, $20,950.

December 3, 1913, $15,000.

January 10, 1914, $21,370.47.

January 17, 1914, $3,700.

Notice, it does not appear what payments were made prior to the taking effect of the new statute; nor whether all was paid, or but a part, after July 4th, when the statute took effect. The time before July 4th and time after that date are both prior to October 13, 1913. So the fact that $57,891.43 was paid ''prior to October 13, 1913, is no evidence that all was not paid *between* July 4th and October 13th.''

For all that appears, all of this 50-odd thousand dollars was paid after the new statute took effect. Assume it may not

command a second payment where, before the statute became ·effective, the party was immune from second payment. But surely, it may competently regulate safety against a second payment, where the first one was made after the statute became effective; at least where, as here, no contract *obligation* created before the statute was, stands in the way. If, then, it be a defense that the new statute attempts to regulate payments that were made before the statute went-into effect, it is still but a defense; and on such defenses the owner has, as against the subcontractor, the burden of proof. *Chicago Lbr. Co. v. Woodside*, 71 Iowa 359. Where he but shows that he paid out an aggregate sum during a period which includes time both before and after the passage of the new statute, it is possible that it was all paid out after the passage; and, therefore, having the burden of proof, he has failed to lay any basis for complaining that the new statute has been applied. Without segregation between the two periods, he lacks one necessary factor in the equation. It therefore does not help the appellants that, "prior to October 13, 1913, they paid the contractor the aggregate sum of $57,891.43."

And how can it help the owners that, subsequent to October 13, 1913, they paid the contractor the aggregate sum of approximately $77,000? Surely, the new statute, which became effective July 4, 1913, controls payments made subsequent to October 13th of that year. All that proving this would accomplish would be to show that, at a time when the statute advised that payments made before a certain period had ,lapsed would not protect against subcontractors, the owner deliberately chose to pay out $77,000, which, if retained, would have been over three times the $24,308.84 required to pay all unpaid claims. And so of proof that the Lamsons, "prior to the 14th of February, 1914," paid out for construction $134,162.90. As seen, for all this record shows, every dollar was paid out after the new statute took effect. If this proof does anything, it aggravates the troubles of the appellant. On this showing, it not only had the right to hold back some $77,000 wherewith to secure lien claimants in some $24,000, but had $134,000 as a fund wherewith to protect those claimants.

9. MECHANICS' LIENS: applicability of statute.

V.   The cross-appeal on part of the plaintiff contends it was error not to give the plaintiff judgment against defendant Maryland Casualty Company, as well as against the Lamsons and the Equitable Surety Company. The plaintiff and the Casualty Company are disputing over whether the bond given by the company runs in favor of the plaintiffs. For the purpose of determining the cross-appeal, we may assume that said bond of the Casualty Company was, at one time, enforcible by these plaintiffs; and it may be further assumed that the trial court erred in not giving judgment against that company. If such claimed error is harmless, and if the appeal complaining of that error raises nothing but a moot question, it is immaterial that, in strictness, the Casualty Company should have been held on its bond. Is not the alleged error a nonprejudicial error, and does the cross-appeal present more than a moot question? There is a presumption of solvency. Be that as it may, there is a stipulation that the defendants Lamson are solvent. There is a further presumption that the officers of the state do their duty. Indulging that presumption works that the Equitable Surety Company is solvent; because, if the appropriate officers do their duty, as it is presumed they did, the said Surety Company could not be doing business in the state, unless it were solvent. Now the plaintiff has a judgment against both the Lamsons and the Equitable Surety Company. We are affirming that judgment. The net result is that the plaintiff will have full satisfaction of its claim. It stands now as if it had stipulated that it has ample security for the payment of the debt due it, without resorting to the Maryland Casualty Company. It urges nothing now except that it should have double security. Had we held plaintiff was not entitled to judgment against the Lamsons, it could recover from no surety. Having, instead, held that it may recover from the Lamsons and the Equitable Surety Company, plaintiff loses nothing by the failure to obtain judgment against the Casualty Company. In logic, it is in no stronger position than it would be if, after being paid its claim, it took an appeal because the trial court did not include enough parties in the paid judgment. It is manifest such an appeal could not be entertained.

10. APPEAL AND ERROR: harmless error: failure to enter judgment.

We are not overlooking that contingencies could arise in which the Casualty Company might be held to respond to its bond, on call by the Lamsons or the Equitable Surety Company. We may assume the Lamsons have a right of action against the Casualty Company for the damages caused them by breach of the contract with Dunphy, which the Casualty Company assured. We may assume that, when the Equitable Surety Company pays, it might have the right to demand contribution from the Casualty Company. And it is the fact that the Lamsons and the Surety Company have assigned error upon the denial of judgment against the Casualty Company. But it takes more than an assignment and a brief point to give a party standing in this court; and those other requisites, the Lamsons and the Surety Company do not possess. They never brought the Casualty Company into court. The only person who did that is the plaintiff; and, as just said, it has nothing to complain of. Neither the Lamsons nor the Surety Company raised any issue with the Casualty Company, and they made no demand for any relief against it: that is to say, the trial was finished without any suit against the Casualty Company on part of the Lamsons or the Surety Company. They are beginning that suit by assigning error in this court. That cannot be effective. We can review nothing but the lawsuit that was tried below. On the question we are now discussing, there was no suit below. We must wait to entertain complaints by the Lamsons and the Surety Company until they bring here for review litigation between themselves and the Casualty Company. To put it mildly, their appeal is premature, so far as they and the Casualty Company are concerned.

11. APPEAL AND ERROR: error point first made on appeal.

The plaintiff has not been injured by refusal to give judgment against the Casualty Company. If the Lamsons and the Surety Company have been injured by that refusal, they have not asserted it in the suit we are dealing with; and we cannot, on this appeal, redress any injury they may have suffered. It follows that, on the cross-appeal as well as the main appeal, there must be an affirmance.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.