IDEAL CEMENT STONE COMPANY, APPELLANT, V. FRED
J. DOHSE ET AL., APPELLEES.
16 N. W. 2d 151

FILED OCTOBER 20, 1944. No. 31796.

*Ritchie & Swenson* and *B. E. Vinardi,* for appellant.
*J. C. Travis, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an action to foreclose a mechanic's lien under the provision of article 1, ch. 52, Comp. St. 1929.

Plaintiff's petition alleges that on or about April 15, 1941, defendant Fred J. Dohse employed A. S. McGimsey, a contractor, for the purpose of constructing a dwelling and garage on defendants' premises; that between April 15, 1941, and June 14, 1941, both inclusive, the plaintiff sold certain materials to McGimsey and delivered the same on the defendants' premises for the purpose above stated; that McGimsey promised and agreed to pay plaintiff the fair and reasonable value of the materials so furnished. Plaintiff filed a mechanics' lien August 13, 1941, claiming $296.91, with interest at 6 per cent per annum from June 14, 1941, and one dollar for filing.

The defendants' answer alleges: Shortly before April 15, 1941, defendant Fred J. Dohse entered into a contract with McGimsey to furnish the materials and perform the labor for the basement walls and chimney of the dwelling for the agreed price of $325. The materials listed in exhibit A, attached to plaintiff's petition, as being delivered on or about the dates of April 15, 1941, and May 2 of the same year, were furnished to the contractor under said contract. Thereafter, or shortly before June 14, 1941, the same defendant entered into a second contract, independent of the first, with McGimsey, to furnish the materials and perform the labor for a cement basement floor in the house and in a garage attached thereto. The materials listed as being delivered June 14, 1941, were furnished McGimsey under the second contract. Before defendants had notice of plaintiff's lien or its filing, the contractor was paid all the amounts due him under both contracts. Being advised of the plaintiff's lien, shortly before December 31, 1941, defendant Fred J. Dohse informed plaintiff that its lien had not been filed in the statutory time as to the first

contract, and offered to pay and tendered into court the amount of $70 for materials furnished under the second contract. The plaintiff's reply alleges that the material furnished was at all times furnished under a continuous running account, constituting one account, and plaintiff was not informed and did not know that there was more than one contract existing between defendants and their contractor and had no notice of any kind or character that separate contracts were being entered into between the defendants and their contractor.

The trial court decreed that the plaintiff's claim for a lien on materials furnished on or before May 6, 1941, be dismissed, rendered judgment against defendants on items delivered June 14, 1941, in the sum of $70, plus $8.60, costs accruing to and including February 5, 1942, taxed all costs subsequent to such date to the plaintiff, and decreed that the plaintiff had no lien, claim or demand of any kind or description against the defendants or their property. From this decree and the overruling of a motion for a new trial, plaintiff appeals, assigning as error that the decision was contrary to the evidence and the law. The record discloses:

Defendant Fred J. Dohse started the excavation of the basement for a house, with garage attached, to be constructed on his premises. In the forepart of April, 1941, he entered into an oral agreement with A. S. McGimsey to furnish the material and perform the work necessary to put in the footing, the walls of the garage, the chimney and the porch pillars. About the same time McGimsey contacted A. V. Johnson, vice-president of the plaintiff company, and told him that Fred J. Dohse was going to build a house and that he, McGimsey, was going to build the foundation and do the work for him. Thereafter, McGimsey, as the contractor, ordered out material, the first delivery being made on the Dohse property April 15, 1941. About the 10th or 12th of June, 1941, Fred J. Dohse entered into another oral agreement with McGimsey, by which the latter should furnish the material and do the work in constructing the basement floor in the house and the garage

and two steps leading from the basement to the garage. Prior to the awarding of the latter contract, a bid was submitted by another contractor and rejected. The contract price for the first contract was $325, and for the second $118. The plaintiff's account shows materials ordered out from and after April 15, 1941, to May 2 of the same year, and thereafter on June 14, 1941. Defendant Fred J. Dohse did the excavating, all of the rough carpenter work, the cement work on the sidewalks and driveway, and the cement steps from the porch to the sidewalk and painted the house with a prime coat.

Payments were made pursuant to the contracts in the following manner: April 19, 1941, in the amount of $75; May 5, 1941, $175; May 10, 1941, $50; total, $300, leaving a balance of $25 withheld by defendant Fred J. Dohse on the first contract, for the reason that McGimsey had not completed the job under the first contract. There remained to be finished off the sills for the basement windows and the pillars for the porch. Further payments were made: On June 21, 1941, the sum of $50 for cement work; June 26, 1941, $50 for cement work; August 2, 1941, in full for labor and material, cement work, $43. The work provided for in the first contract was not entirely completed when the work under the second contract was commenced. The job under the first contract was completed with the material furnished from April 15 to and including May 2, 1941, and the material furnished June 14 was used exclusively under the second contract. There remained on the premises a certain quantity of screened sand and cement which, plaintiff contends, were used in the work covered by the second contract by a finisher smoothing off the cement floors. The finisher did not testify as to where these materials came from. The materials, as shown by plaintiff's account from April 16 to May 2, 1941, inclusive, were of the value of $231.33, and the materials obtained on June 14, 1941, of the value of $65.58.

Plaintiff's evidence is to the effect that in furnishing materials, and, until after filing its mechanic's lien, it had no

knowledge that the materials were being used in the performance of two separate contracts between Dohse and his contractor, but believed the same were being furnished for one continuous job. The vice-president of the plaintiff testified that he understood the materials were for the construction of a house, treated the orders as one job, and furnished the materials accordingly. Further, it is asserted, the receipt (exhibit 4) for the payment made under date of June 21, 1941, referred to, does not contain any separation of the items under the two contracts, but merely recites that said payment was made for cement work.

The plaintiff contends that a running account for materials furnished for the same improvement is deemed one entire transaction for the purpose of a mechanics' lien; therefore, the materialman has the statutory period from the date of the last item in which to file his lien for the entire account, citing 36 Am. Jur. 96, sec. 138, in which it is said: "The time for filing a mechanic's lien begins to run from the time the last item of the account is furnished, when the entire account is a continuous and connected transaction or running account, such an account being deemed an entire contract." In conformity with the above contention and rule, we consider the Nebraska cases cited by the plaintiff on the subject.

In *Ballou v. Black*, 17 Neb. 389, 23 N. W. 3, there was only one contract involved. The question was with reference to the delivery of lumber on different dates. The lumber furnished for the construction of the defendant's building was delivered in five parcels of nearly equal value, one on the 12th, the 14th, the 17th, the 20th and the 28th days of September. The lien was filed November 25 of the same year. It was held that "the same constituted but one delivery, and that the lien was filed in due time to cover the whole." The test is whether separate orders are given under one or separate contracts.

In *Bradford Lumber Co. v. Creel*, 93 Neb. 573, 141 N. W. 145, the court held: "A subcontractor who furnished at different times materials for a house, pursuant to a con-

tinuous course of dealing under a single contract, is entitled to a mechanic's lien for the balance due him, where he filed a proper statement with the register of deeds within the statutory period." While three distinct contracts were claimed by the defendant, the court found there was one contract. Applying the test, heretofore mentioned, in the instant case, plaintiff admits the defendants pleaded and proved two contracts. Obviously, plaintiff's contention, under the circumstances, is erroneous.

Plaintiff concedes the rule against tacking of two separate contracts for the purpose of enabling the mechanic's lien claimant to protect his lien, in so far as earlier items are concerned, is well established in this state. The rule is: "Where labor or material has been furnished by a party under distinct contracts, the claim for a mechanic's lien under each contract must be filed within the time limited by the statute for that purpose." *Henry & Coatsworth Co. v. Halter,* 58 Neb. 685, 79 N. W. 616.

Plaintiff contends, however, that the rule does not apply where the materials were furnished for the same improvement and where the fact that there were two separate contracts between the owner and the principal contractor was not made known to the materialman, and the latter furnished all of the materials upon one running account and under the belief that they were all furnished pursuant to one contract; that in such case the materialman has the full statutory period from the date of furnishing the last item in which to file his lien; relying on *Valley Lumber & Mfg. Co. v. Driessel,* 13 Idaho 662, 93 Pac. 765, followed in *Gem State Lumber Co. v. School District No. 8,* 44 Idaho 359, 256 Pac. 949. For brevity, we state the rule as it appears in the latter case (p. 363) :

" * * * where a defendant seeks to defeat plaintiff's right to recover in an action to foreclose a mechanic's lien by showing that the material was furnished on two separate and distinct contracts, and that the lien was not filed in time to secure the claim for the material furnished on the first contract, the burden of proof is on the defendant to

show either that the plaintiff had actual notice that the material was furnished and used on two separate contracts, or else show such circumstances as would impute to plaintiff constructive notice, and put him on his inquiry to ascertain that two or more contracts did in fact exist." *Gem State Lumber Co. v. School District No. 8, supra.*

The rule announced in *Valley Lumber & Mfg. Co. v. Driessel, supra,* finds support in *Darlington Lumber Co. v. Harris,* 107 Mo. App. 148, 80 S. W. 688, although premised on a different conclusion. The following annotation of the cases appears in 15 L. R. A., N. S., 302: "In *Darlington Lumber Co. v. Harris, supra,* the general doctrine was stated that a completed transaction for which a lien will lie will not be seized by the law as a means to resuscitate a defunct lien pertaining to an entirely distinct transaction; but an exception to this doctrine was recognized where material was furnished by a materialman to a general contractor under substantially one continuous arrangement (One continuous arrangement is not shown in the instant case). In such a case, the fact that this material was used by the contractor in carrying out separate contracts with the owner was held not to affect the right of the materialman to include in his claim for a lien all the material furnished, although a part thereof had been used by the contractor under a contract as to which the time to claim a lien under ordinary circumstances had expired."

Likewise, in the case of *Jones & Magee Lumber Co. v. Murphy,* 64 Ia. 165, 19 N. W. 898, where the material was furnished to the contractor practically continuously, to be used by him in carrying out separate contracts with the owner but relating to the same building, the fact that these contracts were separate was held not to affect the right of the materialman to a lien for all material furnished. See Annotation, 15 L. R. A., N. S., 302. According to *Darlington Lumber Co. v. Harris, supra,* and *Jones & Magee Lumber Co. v. Murphy, supra,* and other cases which follow them, the fact to determine is whether or not a materialman's lien may be filed for all deliveries and to ascertain

whether the various orders placed by the original contractor with the materialman are for the same general construction and constitute one transaction and a continuous running account.

Plaintiff concludes that the rule as announced in *Valley Lumber & Mfg. Co. v. Driessel, supra,* and *Gem State Lumber Co. v. School District No. 8, supra,* is not in conflict with the decisions of this court, for the reason that in the Nebraska cases the party claiming the lien was himself a party to the separate contracts which the court held could not be tacked; that is, that the lien claimant, as a materialman, had actual and constructive knowledge of the existence of the two contracts and, for the purposes of a mechanic's lien, was bound thereby.

In the instant case the contractor informed the materialman that defendant Fred J. Dohse was going to construct a house with garage attached and that he was going to build the foundation and do the work for him. Plaintiff implies from this that the words, "do the work for him," meant the construction of the house and attached garage. From the very nature of the materials delivered to defendants' premises from April 15 to and including May 2, 1941, it is obvious that such materials were those used in building the foundation for the house.

Plaintiff raises the question that some of the material furnished under the first contract was used after the second contract was commenced, presumably to show the continuance of the work as one job. The fact that a certain amount of screened sand and cement, which had been delivered under the first contract, still remained on the premises when the delivery of materials on June 14 was made, and some of the first material was used by the finisher on the basement floor, is immaterial. The plaintiff admits that the defendants pleaded and proved two contracts. On June 14, 1941, about five and a half weeks after delivery of materials made on May 2, other materials of like nature were delivered by plaintiff to defendants' premises which were used under the second contract. While this lapse of time

is referred to as not being unreasonable or unusual, from the nature of the materials used and the work performed under the contract, we conclude that the materialman had sufficient notice to place the plaintiff in a position to ascertain the facts with reference to the two contracts, had it used reasonable diligence.

In *Disbrow & Co. v. Peterson,* 136 Neb. 719, 287 N. W. 220, this court said: "It is clearly the purpose of the statute (mechanics' lien statute) to protect the diligent subcontractor if he acts within a specified and limited time.". In the *Disbrow case* there remained to be delivered two window screens which were within the contemplation of the parties under the original contract. The final delivery of all purchases, except two window screens, was made on October 30, 1936. The contractor was billed November 12 following. On May 6, 1937, the two window screens were delivered. July 1, 1937, plaintiff filed a mechanic's lien. This court held that the subcontractor as not entitled to a mechanic's lien under the facts. The court indicated that, if the statute for the filing of a mechanic's lien could be extended in this manner, the title to the property may, for an indefinite period, remain in an unsettled and not ascertainable condition with reference to the character and extent of mechanics' liens which may be claimed against such property. In view of this holding, it is quite apparent, where it is admitted that two separate contracts were proved, that they cannot be tacked together for the purpose of extending the time for the materialman to file a mechanic's lien.

The case of *Carr & Neff Lumber Co. v. Krogh,* 94 Neb. 537, 143 N. W. 813, is in point with reference to actual or constructive notice given to the materialman respecting two separate agreements. In that case, defendant Krogh authorized his tenant to purchase certain items to be used in the building of a barn, repairing the house and fences. The materialman furnished the material for these items in June, 1909. Witnesses testified to admissions made by Krogh that he told the tenant he would stand good for the

lumber and material that was necessary to use on the premises, and that, when he was presented with a bill for the whole amount of material furnished, he said: That was all right; he had given an order for lumber, and "when he got through with it he would settle the whole thing." Krogh denied that he gave the tenant authority to buy specific items in the bill, but he did say he would pay for all lumber the tenant had ordered that was necessary on the place. Certain materials were purchased by the tenant from the materialman September 28, to be used in the construction of a potato cellar. The controversy was over whether the material furnished in June was furnished under a separate contract from that furnished in September. If that be true, then the mechanic's lien which was filed more than four months after purchase of the material was void. The materialman was not a party to, nor did he have any knowledge of, the authorization given by defendant Krogh to the tenant, or of any agreements between them with respect to the materials. The court found there were two separate authorizations, two contracts between the landlord and tenant.

In *Rivett Lumber & Coal Co. v. Linder*, 113 Neb. 567, 204 N. W. 77, the owner contracted with a general contractor to build three dwellings. The contractor presented to the materialman a list of lumber and materials necessary for the construction of one of the three dwellings, and a list of millwork, requested prices thereon, informing the materialman that there would be three dwelling houses, each of the same character. The contractor had a contract with the owner to erect a garage and to repair some old buildings on the premises. The plaintiff did not know of such contract. It bid on the bill of lumber and materials which was supplied in triplicate. The court said that such materials were proper items in the lien and payment was secured thereby. "But those items which went into the construction of the garage are not so protected, and, in so far as they are included in the amount found due the plaintiff, such finding and decree are not supported by the evi-

dence"—following the rule announced in *Henry & Coats-worth Co. v. Halter, supra.* It will be observed that the materialman had no knowledge of the existence of the contract involving the construction of the garage and repair of old buildings and was not a party to the separate contracts.

In view of the foregoing Nebraska cases and the rule announced therein, we conclude that the judgment of the trial court is correct.

AFFIRMED.